## JACOB VAUGHN v. HANKINSON'S ADMINISTRATOR.

1. A diploma, under the seal of the New Jersey Medical Society, cannot be received in evidence until the genuineness of such seal has been proved.

2. The payment of a sum of money on an open book account, which has never been presented or recognized in its entirety, is not a fact from which alone a promise to pay can be inferred, so as to take the whole account out of the statute of limitations.

On a writ of error brought to reverse the judgment of the Circuit Court of the county of Ocean, rendered in favor of the plaintiff below.

The grounds taken for reversal are set out in the opinion of the court.

Argued at February Term, 1871, before BEASLEY, CHIEF JUSTICE, and Justices BEDLE, DALRIMPLE, and DEPUE.

For plaintiff in error, *R. S. Green.*

For defendant, *Wm. H. Vredenburgh.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This suit was on an account taken from the book of the late Doctor Hankinson, for medicines prescribed and delivered, and for service performed by the deceased in his professional capacity, for the defendant. On the trial in the court below, in order to prove the medical character of Doctor Hankinson, a writing was offered in evidence, which, upon its face, purported to be a diploma, under the seal of the Medical Society of New Jersey.    This instrument was admitted and sent to the jury against the protest of the counsel of the defendant, and this ruling forms the ground of the first bill of exceptions.    The point of objection was, that no evidence was offered to identify the corporate seal in question.

The general rule undoubtedly is, that a seal of a corporation will not be noticed, *ex officio*, by the courts, and that its authenticity must be shown by testimony.    In the brief of the counsel of the defendant in error, the general proposition is not controverted, but it is said that the Medical Society of New Jersey is a public corporation, and that the seal of such a corporation will prove itself.    No authority is vouched for this assumption, and it is not probable that any can be found. The only ground for claiming that this society, under the act of 1830, was a public corporation in such a sense as to distinguish it from other classes of persons incorporated on public grounds is, that there is a clause in the statute making it a public act.    But this clause is frequent in charters, and has not the effect attributed to it.    The legal rule is defined and explained with accuracy and precision by Chief Justice Kinsey, in the case of *Den, Tours,* v. *Vreeland,* 2 *Halst.* 352.    On that trial it was necessary for the plaintiff to prove title under a lease from the ministers, elders, and deacons of the Reformed Bergen Church to Tours.    The deed was produced under a seal, purporting to be a seal of the corporation, but no proof was offered of its authenticity.    This instrument was overruled at the trial, and the plaintiff non-suited ; and this result was approved of by the court in banc.    This case has

been frequently cited with evident approval. The current of similar cases appears to be unbroken. Thus, we find the same rule held with respect to a banking corporation, *Leazure v. Hillegas*, 7 *Serg. & R.* 313; a public incorporated hospital, *Jackson v. Pratt*, 10 *Johns.* 381; the seal of the corporation of Belfast, Ireland, *Foster v. Shaw*, 7 *Serg. & R.* 156. The only exception which I have noticed to this general practice relates to the seal of the city of London, and this exception appears to have been based on the antiquity of this great city, its recognition by *Magna Charta*, and the importance and dignity of its judicial and municipal institutions. 2 *Phil. Ev.* 173. But there are likewise cases which rest upon facts very like those embraced in the case now under consideration. One of these is *Moises v. Thornton*, 8 *T. R.* 303. A medical diploma, purporting to have been granted by the University of St. Andrews, in Scotland, and to have the university seal appended to it, was rejected by Lord Kenyon, for the reason that there was no proof of the genuineness of such seal. And in *Chadwick v. Bunning, Ryan & M.* 306, it was declared that a statute which enacted that the common seal of the apothecaries of the city of London should be received as sufficient proof of the authenticity of any certificate to which such seal should be affixed, did not make such certificate evidence, without proof that the seal affixed, was the genuine seal of the society. These authorities, I think, abundantly show that the diploma in the present case was, as the proofs stood at the trial, inadmissible, and should have been overruled.

But it is further contended on the part of the defence, that the fact of Doctor Hankinson's having the diploma in question was not material to the plaintiff's right of recovery, and that the admission of this evidence did no harm to the plaintiff in error. This court, in *Dow v. Haley*, 1 *Vroom* 354, decided that to support an action on a physician's bill, the plaintiff must prove that he had been duly licensed or had a diploma, as prescribed by the act incorporating the medical society. It is said this act, which gave rise to this decision, has been

repealed, and that a physician can now sue without showing that he is a licensed practitioner. But I think it is entirely plain that this repealer, as applied to the facts of the present case, cannot have the effect attributed to it. The act of 1830, and which was not repealed until the year 1864, declared that no person should practice physic or surgery within this state until he should have passed an examination and received a diploma from the medical society of New Jersey. A penalty was denounced for the violation of this provision; and it was also enacted that every person who practiced medicine without the designated qualification, should be debarred from collecting any debt so incurred, in any court of this state. The professional services embraced in this suit were all rendered during the existence of this law. It is obvious, therefore, that the right to recover for such services altogether depends on the circumstance that at that time Dr. Hankinson was duly qualified to practice medicine in this state. Unless thus qualified, every act which goes to make up the charge of this bill was a violation of law. The counsel for the defendant in error seems to be under the impression that this statute did not destroy the debt which accrued when an unlicensed person practiced, but that its whole effect was to take away the remedy by action; and that the repealer, leaving the cause of action intact, removed the prohibition against bringing suit. But the error in this construction arises from overlooking the fact that unless the services were done by force of medical license, no debt whatever either did or could accrue. In the absence of such an authority, to practice medicine was prohibited by the statute; it was a legal wrong which could confer no rights on the person committing it. Nor will the repeal of the act in question alter the case; a violation of a statute does not cease to be an illegal act because the act so violated is subsequently rescinded. The existence of the diploma in question was an essential element in the case of the defendant in error, and as the evidence, with respect to this instrument, was not legal, the judgment on this account cannot be supported.

There was a second bill of exceptions in this case, the subject of which, as it respects a matter of general interest, it is proper to notice.

The account on which the action was founded commenced in the year 1841, and continued down to January, 1863, extending over a period of twenty-two years. These charges were all against the defendant, amounting, in the aggregate, to $653. Only two of these charges, being together $8.50, were within six years before the commencement of the suit. It was not pretended that there were any mutual accounts. The only evidence that the plaintiff offered to overcome the defence of the statute of limitations, consisted in the proof of an account of certain payments of cash, commencing in the year 1847 and ending in the year 1864, which the defendant had left with him as administrator of Doctor Hankinson. These payments were sworn to. The last two of these payments, amounting to the sum of $25, had been made within six years before the bringing of this suit. Under these circumstances the court charged the jury that it was a question of fact for them to decide, whether the defendant, by the payment of the last two items in the defendant's credits, intended to make a new promise to pay the whole of the plaintiff's account, "and that if they so found, it would take the case out of the statute of limitations." This instruction was excepted to.

After a careful consideration of the authorities, I am satisfied that there was not sufficient in the facts above stated to warrant a submission of this case to the jury. There were no facts in dispute, and therefore a naked question of law was presented. The question was simply this: whether a payment of certain sums of money, without any appropriation of such payments, to a creditor who had an account running through many years against the party paying, is, *per se,* any evidence of a promise to pay the whole of such account. For example, on the 4th of October, 1863, this defendant paid to Doctor Hankinson the sum of $5. It is insisted that this payment took out of the operation of the statute of limitations

a book account.running back over twenty years, and amounting to over $600. I think this is not the law. The judicial decisions all stand in opposition to such a conclusion, and it is clearly inconsistent with public policy. The error in supposing a payment on a claim of this character will warrant an inference of a promise to pay the whole, arises from not discriminating between such a claim and those which consist of a fixed amount known to both parties. If a payment is made on a promissory note, such act, of necessity, is a recognition of the amount specified in such contract. But a book of account is made up of distinct and separate transactions, so that a payment of a specified amount on such account cannot have relation to particulars, which it is not shown have ever been brought to the knowledge of the party making the payment. If the account has been presented so that the series of charges are unified, so to speak, then the rule would be different, for a payment of part would then be a recognition of the whole. In the present case, the plaintiff paid first $5, and then in the next year $20 ; but it does not appear that he was aware that there was any book account kept against him, or that any debt beyond the amount of such payments was claimed. Such acts cannot afford any rational basis for an inference that the defendant acknowledged that he was in debt on an account beginning over twenty years before, and of the existence of which he was apparently unconscious. The plaintiff in the court below should have been non-suited on his own showing.

Upon turning to the decisions, it will be found that the part payment, which will operate to remove the bar of the statute, must be in part satisfaction of a larger debt known to the party. Professor Parsons, speaking on this subject, remarks : " It must, however, be certain that payment is made only as part of a larger debt, for in the absence of conclusive testimony, it will not be deemed an admission of any more debt than it pays." 2 *Parsons on Con.* 354. The rule thus laid down is fully warranted by the cases. A leading authority is that of *Tippits* v. *Heane*, 1 *Cr., M. & Ros.* 252.

It was an action of *assumpsit* for meat, lodging, &c. The case was tried before Baron Vaughn, and the plaintiff, to take the case out of the statute, proved that he had been paid £10 by the direction of the defendant, and it was left to the jury to say whether this money was paid on the debt in question. On a motion for a new trial, the court held that as no other debt appeared, the jury were warranted in considering this payment as a part satisfaction of the debt in question. But this was not deemed sufficient to remove the bar of the statute, Baron Parke saying : " The case must go further ; for it is necessary, in the third place, to show that the payment was made in part payment of a greater debt, because the principle upon which a part payment takes a case out of the statute is, that it admits a greater debt to be due at the time of the part payment." The two following cases will be found to be, in all respects, in point: *Mills* v. *Fowkes*, 5 *Bing. N. C.* 455 ; *Waugh* v. *Cope*, 6 *M. & W.* 824. A large number of decisions to the same effect are cited in Professor Parsons' work at the place above referred to. I think these citations will clearly show that the doctrine is quite established that a naked payment on an open account consisting of a number of items, which, it does not appear, have before been brought to the notice of the party making payment, is not an acknowledgment of a debt due beyond the amount of the sum paid. The exception on this head also was, therefore, well taken.

I have not thought it necessary to advert to the evidence which was offered on the part of the defendant in the court below, and on which I observe some stress is laid in the brief of counsel. Its general effect is to strengthen the conclusion that the defendant did not admit any indebtedness exceeding the sum included in his payments. But in the view which I take of the legal principles applicable to the case, the testimony has not appeared to me to be of any especial importance.

The judgment of the Circuit Court should be reversed.