23 N.J. Super. 484 (1952)
93 A.2d 414
MARGARET FARBSTEIN, PLAINTIFF-RESPONDENT,
v.
HELEN EICHMANN, EXECUTRIX OF THE ESTATE OF FRED EICHMANN, DECEASED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1952.
Decided December 8, 1952.
*485 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Nicholas S. Schloeder argued the cause for appellant.
Mr. Albert S. Gross argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff sued defendant as executrix of the estate of her former employer Fred Eichmann, an attorney, for the unpaid balance of $2,336 salary earned while she was in decedent's employ. The defense was the statute of limitations. The jury returned a verdict in favor of plaintiff in the sum of $3,067.04, representing the unpaid balance of salary plus interest. Judgment was entered in this amount and it is from this judgment that defendant appeals.
Plaintiff first came to work for decedent in 1922 as his secretary at a salary of $30 a week. She continued in his employ until 1943 when she left to join her husband who was in the service. She returned in the fall of 1945 at a salary of $40 a week and continued to work for Eichmann through 1947, the salary having been increased to $45 in 1946. The *486 basis of plaintiff's claim is that she was supposed to be paid at the rate of $30 a week or $1,560 a year, from 1932 to 1943, inclusive. According to the schedule annexed to the complaint, prepared by plaintiff and supposed to be a summary of decedent's books, she received only $1,525 in 1932, $1,300 in the years 1933 to 1940, inclusive, and $1,339 for the year 1941, the differences in salary totaling $2,336. Plaintiff received all of the salary to which she was entitled while in decedent's employ during the period 1942 to 1947, inclusive. The complaint was filed in November 1951.
Plaintiff produced four witnesses in support of her claim. Their testimony was general and vague. Decedent's sister testified that her brother at various times told her he owed plaintiff six or eight weeks' salary and didn't know where he was going to get the money; also that "I owe her money  I promised her $1,000." No time is fixed for these conversations and there is nothing to show for what period the money was due. One Tomei, associated with decedent from 1937 to 1943 and again in 1946 and 1947, testified that decedent had told him he owed plaintiff money, but the time and the amount are not fixed. This witness referred to a "running account" with plaintiff, the basis of this conclusion apparently being that plaintiff's salary had at one time been paid irregularly. He testified that plaintiff "used to put down on a piece of paper that so much was due to her. Then he would pay her crazy sums. I mean, sometimes he would give her $500 and sometimes $600." This undoubtedly took place before 1943, for both plaintiff's schedule and decedent's books indicate regular payments beginning with 1943.
Another associate, Zimmerman, testified that decedent admitted owing plaintiff money, but his testimony clearly related to a period before the termination of his association in 1937. The final witness, Kaplan, was associated with decedent between 1947 and 1951. He testified that about 1948 decedent said he owed plaintiff "a lot of money," but nowhere in his testimony is there any indication of the amount or the nature of the alleged indebtedness.
*487 At the conclusion of this testimony defendant moved for involuntary dismissal because the claim was barred by the statute of limitations. The motion was denied on the ground there was a running account. The court apparently was impressed by the representation of counsel for plaintiff  not supported by the record  that there was a payment of $1,060 in excess of the salary due for 1946, thus reviving the debt incurred before 1943.
Defendant moved for judgment (erroneously termed "directed verdict"  see Rule 3:50) at the close of the entire case because of the running of the statute of limitations and for the further reason that plaintiff had failed to sustain her burden of proof. The motion was denied and the case sent to the jury.
Plaintiff not only was decedent's secretary, but also his bookkeeper. It was she who in regular course made the entries in decedent's ledger, except for the period from 1943 to 1945 when she was not in his employ. Examination of decedent's records shows that the amounts due and the amounts paid plaintiff for salary are identical from 1942 on. Weekly salary payments were regularly made in 1943 and thereafter. If an unpaid balance ever existed, it can only be assumed to have arisen by reason of the difference between the salary stated and the salary paid. On the basis of plaintiff's own proofs, such a balance could only have been created prior to 1942. If any salary difference existed at the end of any year, nowhere in the record is it carried over to the next year as an unpaid balance.
It would appear that during the depression years plaintiff had received her salary irregularly, that weeks would often pass without payment, and then she would be paid in a lump sum. Here we find a possible explanation of decedent's statements to the several witnesses about a debt due to plaintiff. But when this practice ceased is not made to appear. The books themselves do not indicate the possibility of any such practice from 1942 on.
*488 Although defendant at various times during the trial unsuccessfully objected to the admission of certain testimony because it related to transactions with or statements by the decedent (R.S. 2:97-2, now N.J.S. 2A:81-2), the court's rulings are not now urged as a ground for appeal. The sole issue raised is that the trial court erred in denying defendant's motions for involuntary dismissal and for judgment. The apparent reason for such action was that decedent's books exhibited a running account. Plaintiff contends that the proofs do establish such an account, not barred by the statute of limitations. Defendant argues that the account was not mutual and all payments made within the six-year statutory period were for current salary and not upon any unpaid balance.
Our first statute of limitations was the Act of 1727 (Nevill, Acts of the General Assembly of the Province of New Jersey 158 (1752)), which declared that all the English statutes concerning the limitation of actions, real and personal, should be in force here. Until that time the statutes of 32 Hen. VIII, c. 2 and 21 Jac, I, c. 16, relating to limitation of actions, were not considered as extending to this country. Den. ex dem. Johnson v. Morris, 7 N.J.L. 6 (Sup. Ct. 1822). "An Act for the limitation of actions," passed February 7, 1799, provided that "all actions of debt, founded upon any lending or contract, without specialty, or for arrearages of rent due on a parol demise, and all actions of account * * * except * * * such actions as concerned the trade of merchandise between merchant and merchant, their factors, agents and servants, shall be commenced and sued within six years next after the cause of such actions shall have accrued, and not after." The words of the exception are those of our present statute (R.S. 2:24-1, now N.J.S. 2A:14-1) and were taken from the provisions of the statute of 21 Jac. I. As was pointed out by Chief Justice Ewing in the early case of Belles v. Belles, 12 N.J.L. 339, 345 (Sup. Ct. 1831), the exception had *489 "long since been extended, by an equitable construction, so as to embrace accounts of other persons, not merchants, between whom there have been mutual dealings and credits, some of which are of more than six years standing, and others less. For where there is such current account, each article advanced upon account may be considered as a partial payment or acknowledgement of a counter demand. This equitable extension of the statute may very properly take place in case of mutual current accounts, or wherever any such connection between them appears in their nature, or from evidence, that the latter might fairly be considered as `an admission of there being some unsettled account between the parties.' * * * The most usual case of the extension of the exception in the statute is to mutual, continued and open accounts."
The Belles case uses the phrase "mutual, continued and open accounts." Although in some states the statutory exception is of "open accounts," in others of "running accounts" or "open current accounts," and in still others of "mutual, open and current accounts," the fundamental principle which emerges from the cases is the same and may be found in the annotations in 1 A.L.R. 1060, 39 A.L.R. 369, 57 A.L.R. 201 and 1 A.L.R.2d 643. The law is summarized in 34 Am. Jur., Limitation of Actions, § 97, p. 80:
"It is not every open account current between parties, although they may severally have cross open accounts against each other, that is a mutual one within the meaning of the statute of limitations. To render an account mutual, there must be an alternate course of dealing between the parties, giving rise to cross demands upon which they might respectively maintain actions, and there must be a mutual agreement, express or implied, that the items of the account upon the one side and the other are to be set against each other. An account is not mutual if all the items are on one side, and although there are cases to the contrary, according to the weight of authority, the mere payment of money on an account does not have the effect of rendering the account mutual, but operates simply as a reduction pro tanto of the claim. It is also held that disconnected and opposing demands between two parties do not constitute a mutual account."
See also 54 C.J.S., Limitations of Actions, § 165, p. 112 et seq.
It is impossible in this case to spell out the existence of a mutual, continued and open account so as to save plaintiff's claim from the running of the statute of limitations. *490 Nor was there any payment on account that would bring her claim within the protection of R.S. 2:24-9, now N.J.S. 2A:14-24. That section provides that "no acknowledgement or promise by words only shall be deemed sufficient evidence of a new or continuing contract," so as to take the case out of the operation of the statute of limitations, "unless such acknowledgment or promise shall be made or continued by or in some writing to be signed by the party chargeable thereby." This language is, however, coupled with the proviso that the section "shall not be construed to take away, lessen or alter the effect of any payment of principal or interest made by any person on the obligation in suit." The source of this legislation was Lord Tenterden's Act, 9 George IV, c. 14, whose provisions were substantially adopted by our Legislature in the act of March 27, 1874 revising the Limitation of Actions Act of 1846, effective January 1, 1875. Revised Statutes of New Jersey (1874), p. 440.
In Romaine v. Corlies, 47 N.J.L. 108, 109 (Sup. Ct. 1885), decided after the revision, the court said:
"The mere payment upon a book account, without some act or declaration to show that the debtor recognizes the whole claim and intends to appropriate the payment upon the whole account, will not take the unpaid part out of the statute. * * *
It must appear that the payment is made only as part of a larger debt, for in the absence of such evidence it will be deemed an admission of no more indebtedness than it pays."
See Vaughn v. Hankinson's Adm'r., 35 N.J.L. 79 (Sup. Ct. 1871); cf. Trenton Banking Co. v. Rittenhouse, 96 N.J.L. 450 (E. & A. 1921).
In summary, the cases have held that where a payment is expressly made upon the unpaid balance of an ordinary running account, with the express intention of acknowledging such unpaid balance and reducing the amount thereof, the matter is taken out of the bar of the statute of limitations.
In the instant case it is clear that the payments made by decedent to plaintiff during the period which constitutes *491 the bar were expressly made for salary earned currently during that period. There is no suggestion that any of these payments were made for anything else, least of all as payments of salary that may have been withheld in the decade following 1932. The testimony of the witnesses fails to establish such fact; indeed, no attempt was even made to show that such was the case.
The judgment must be reversed.