254 N.J. Super. 370 (1992)
603 A.2d 552
DELUXE SALES AND SERVICE, INC., PLAINTIFF-APPELLANT,
v.
HYUNDAI ENGINEERING & CONSTRUCTION CO., LTD., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1992.
Decided March 6, 1992.
*372 Before Judges ANTELL, BAIME and THOMAS.
Kenneth R. Cohen, argued the cause for appellant (Klein Chapman, attorneys; Kenneth R. Cohen on the brief).
Jill L. McNish argued the cause for respondent (Gelman & McNish, attorneys; Reid & Priest of counsel; Jill L. McNish on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiff Deluxe Sales and Service, Inc. (Deluxe) appeals from a summary judgment entered by the Law Division, dismissing its complaint against defendant Hyundai Engineering & Construction Co., Ltd. (Hyundai) based upon the expiration of the statute of limitations. Deluxe contends that (1) its complaint was filed within the limitations period, (2) the statute of limitations tolled because the invoices which are the subject of this suit were part of a running book account, and (3) Hyundai should be equitably estopped from raising the limitations defense. We find no merit in these arguments and affirm the judgment essentially for the reasons expressed by Judge Meehan.
The facts are not in dispute. Deluxe is engaged in the business of selling trucks, parts and accessories. Hyundai was a steady customer of Deluxe from 1982 through 1991. During this period, Deluxe sent parts to Hyundai's factories and plants throughout the world and was paid by drawing on letters of credit based upon amounts itemized in separate invoices. Unfortunately, Deluxe discarded the letters of credit "back up" *373 information. Its claims respecting what amounts were due and owing wildly diverged from statement to statement.
On February 8, 1989, Deluxe's president, Arleen Stein, sent a letter to Hyundai's Fort Lee office, stating that upon reviewing its account, over 19 items remained unpaid. These invoices dated from March 9, 1982 to October 3, 1985. A "follow-up" letter was sent on March 7, 1989. In response, Hyundai requested Deluxe to furnish the order numbers on the invoices to facilitate its investigation. On May 19, 1989, Deluxe provided a revised list of invoices on items that it claimed had not been paid. This list eliminated eight of the 19 invoices originally claimed as due. Several months later, Deluxe sent a statement indicating an outstanding balance of $166,649.20 on the unpaid invoices. On November 15, 1989, Deluxe wrote yet another letter again revising the list of unpaid invoices, this time reinstating seven of the items Stein had eliminated in her May 19 letter. During these exchanges, Hyundai never offered to settle these claims. Apparently, at various times, Hyundai asserted that Deluxe was attempting to "double bill" items that had already been paid. According to Stein, however, Hyundai's general manager advised her that the outstanding balance was $131,000 "based on his records" but the Seoul office could confirm "only $40,000 due to Deluxe." Stein nevertheless conceded that this conversation occurred in 1991, long after the limitations period had expired.
On January 16, 1991, some five and one-half years after the most recent invoice at issue was tendered, Deluxe filed its complaint, asserting that invoices totalling $74,639.43 had not been paid. Deluxe subsequently filed an amended complaint, increasing its ad damnum clause to $157,781,43. In granting Hyundai's motion for summary judgment, Judge Meehan reasoned that Deluxe's cause of action accrued when the amounts claimed in the invoices became due. The judge emphasized that Hyundai's payments were submitted against the most current invoices rather than the oldest balance due. Judge Meehan found that, despite the long standing relationship between the *374 parties, each transaction was separate and distinct and current payments for more recent invoices did not constitute an admission by Hyundai of an unsettled account. The judge also determined that Hyundai's conduct in investigating Deluxe's varying claims did not lull it into believing it would be paid without the necessity of resorting to suit.
We are in complete accord with Judge Meehan's findings and conclusions. Initially, we reject Deluxe's claim that its complaint was filed within the limitations period. Deluxe's argument is somewhat prolix. It asserts that its cause of action accrued when the parts were delivered. Because the dates of delivery were never conclusively established, Deluxe argues that its complaint was filed in a timely manner.
N.J.S.A. 12A:2-725 provides that an action for breach of contract "must be commenced within four years after the cause of action has accrued." Our courts "have identified the accrual of the cause of action as the date on which `the right to institute and maintain a suit' first arose." Rosenau v. City of New Brunswick and Gamon Meter Co., 51 N.J. 130, 137, 238 A.2d 169 (1968) (quoting Fredericks v. Town of Dover, 125 N.J.L. 288, 291, 15 A.2d 784 (E. & A. 1940); Hartford Accident and Indemnity Co. v. Baker, 208 N.J. Super. 131, 135-36, 504 A.2d 1250 (Law Div. 1985); Montag v. Bergen Bluestone Co., 145 N.J. Super. 140, 144, 366 A.2d 1361 (Law Div. 1976)); see also American Cyanamid Co. v. Mississippi Chemical Corp., 817 F.2d 91, 93 (11th Cir.1987). In an action on a sales contract, "[a] cause of action accrues when the breach occurs...." N.J.S.A. 12A:2-725(2). This is to be distinguished from an action on a warranty where the cause accrues "when tender of delivery is made." Ibid.; see Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260, 270-71, 527 A.2d 875 (App.Div. 1986).
Against this backdrop, we deem the dates that the invoices issued as the critical points in determining when Deluxe's claims accrued. It was on those dates that Deluxe had a *375 right to enforce its claims and institute suit. Any alleged breach occurred  and Deluxe's right to file a complaint arose  upon Hyundai's failure to pay the invoices.
Beyond this, even were we to adopt Deluxe's position, the result would not be different. The record does not suggest that delivery of the items occurred long after the invoice dates. The only evidence presented in the Law Division on this point was an affidavit of D.J. You, Hyundai's representative, indicating that all of the transactions occurred between 1982 and 1985. In short, we agree with Judge Meehan's conclusion that the complaint was filed five and one-half years after the most recent invoice, substantially beyond the limitations period.
We find no merit in Deluxe's argument that the cause of action accrued upon the cessation of its business dealings with Hyundai in 1991. Deluxe's contention is grounded in the exception for actions "upon an account ... which concerns the trade of merchandise between merchant and merchant," appearing in N.J.S.A. 2A:14-1. This exception to the general six year limitations period for actions on a debt can be traced to a statute enacted in 1799. See Farbstein v. Eichmann, 23 N.J. Super. 484, 488, 93 A.2d 414 (App.Div. 1952). Despite the literal wording of the statute, the exception had "long since been extended, by an equitable construction, so as to embrace accounts of other persons, not merchants, between whom there have been mutual dealings and credits, some of which are of more than six years standing, and others less." Belles v. Belles, 12 N.J.L. 339, 345 (Sup.Ct. 1831). The underlying rationale appears to be that "where there is such current account, each article advanced upon account may be considered as a partial payment or acknowledgement of a counter demand." Id. at 345-46. The thesis is that subsequent transactions "might fairly be considered as `an admission of there being some unsettled account between the parties.'" Id. at 346. In such a case, it has been said that "an item for which credit has been given within six years, is evidence of a promise to pay the balance, and will take *376 the case out of the statute." Burnet v. Bryan, 6 N.J.L. 377, 380 (Sup.Ct. 1797).
Not every "open account current between the parties ... is a mutual one within the meaning of the statute of limitations." Farbstein v. Eichmann, 23 N.J. Super. at 489, 93 A.2d 414 (quoting 34 Am.Jur. Limitation of Actions § 97 (1941). "The mere payment upon a book account, without some act or declaration to show that the debtor recognizes the whole claim and intends to appropriate the payment upon the whole account, will not take the unpaid part out of the statute." Romaine v. Corlies, 47 N.J.L. 108, 109 (Sup.Ct. 1885). "It must appear that the payment is made only as part of a larger debt, for in the absence of such evidence it will be deemed an admission of no more indebtedness than it pays." Ibid.; see also Vaughn v. Hankinson's Adm'r., 35 N.J.L. 79 (Sup.Ct. 1871); cf. Trenton Banking Co. v. Rittenhouse, 96 N.J.L. 450, 115 A. 443 (E. & A. 1921).
These decisions can be summarized as holding that "where a payment is expressly made upon the unpaid balance of an ordinary running account, with the express intention of acknowledging such unpaid balance and reducing the amount thereof, the matter is taken out of the bar of the statute of limitations." Farbstein v. Eichmann, 23 N.J. Super. at 490, 93 A.2d 414. This exception clearly does not apply here. In this case, the record reflects that payments were applied to the most current accounts rather than to the oldest outstanding invoices. As in Farbstein v. Eichmann, it is plain that payments made by Hyundai were expressly made for items covered in current accounts. Id. at 490-91, 93 A.2d 414. There is no suggestion that payments made within the limitations period were for anything else, least of all as payments for items delivered or invoiced between 1982 and 1985. Under almost identical circumstances, we held in Farbstein that the "open account" exception was inapplicable. Ibid. The same principles apply here. In sum, it cannot fairly be said that payments *377 made by Hyundai for transactions which occurred within the limitations period constituted an acknowledgment of a larger debt. Romaine v. Corlies, 47 N.J.L. at 109.
We note one further point in passing. This case involves merchants engaged in the sale of goods. N.J.S.A. 12A:2-102; N.J.S.A. 12A:2-104(1). Consequently, N.J.S.A. 12A:2-725 is the applicable statute of limitations, not N.J.S.A. 2A:14-1. We stress that N.J.S.A. 12A:2-725, unlike N.J.S.A. 2A:14-1, contains no exception dealing with "running accounts." N.J.S.A. 12A:2-725(4) states that "[t]his section does not alter the law on tolling of the statute of limitations...." Perhaps, it can be argued that the "running account" exception which appears in N.J.S.A. 2A:14-1 constitutes a "tolling" provision, which survived enactment of the Uniform Commercial Code. We observe, however, that most jurisdictions apply their Uniform Commercial Code statute of limitations to actions involving "running accounts" based upon the sale of goods. Compare Hughes v. Collegedale Distributors, 355 So.2d 79, 81 (Miss. 1978); Sesow v. Swearingen, 552 P.2d 705, 706 (Okla. 1976); Big D Service Co., Inc. v. Climatrol Industries, Inc., 523 S.W.2d 236 (Tex. 1975); Wilson v. Browning Arms Company, 501 S.W.2d 705, 706 (Tex.Civ.App. 1973), with Childs v. Taylor Cotton Oil Co., 612 S.W.2d 245, 249-50 (Tex.Civ.App. 1981). The majority view is that the Code's statute supersedes the limitations period otherwise applicable to "running accounts." In light of our holding that the "running account" exception provided by N.J.S.A. 2A:14-1 is not applicable to the facts of this case, we need not dwell upon the subject. We leave for another day the question whether the exception has been "displaced" by N.J.S.A. 12A:2-725. See N.J.S.A. 12A:1-103.
Finally, we are entirely unpersuaded by Deluxe's argument that Hyundai should be estopped from raising the statute of limitations as a defense. While we recognize the broad reach of the doctrine of equitable estoppel, we have no occasion to apply it here.
*378 In New Jersey, we have a "long history of instances where equity has interposed to bar the statute of limitations ... where some conduct on the part of the defendant ... has rendered it inequitable that he be allowed to avail himself of this defense." Lopez v. Swyer, 62 N.J. 267, 275 n. 2, 300 A.2d 563 (1973). The principle is bottomed on equitable considerations and, hence, the exact contours of the doctrine defy rigid definition. Garcia v. Snedeker, 199 N.J. Super. 254, 262, 489 A.2d 175 (App.Div. 1985). Suffice it to say, the rule has been applied in a plethora of factual patterns. See, e.g., Griggs v. Bertram, 88 N.J. 347, 355-64, 443 A.2d 163 (1982); Warren v. The Employers' Fire Ins. Co., 53 N.J. 308, 311-12, 250 A.2d 578 (1969); Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 111, 207 A.2d 513 (1965); Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 128-29, 179 A.2d 505 (1962); Friedman v. Friendly Ice Cream Co., 133 N.J. Super. 333, 337-38, 336 A.2d 493 (App.Div. 1975); Fredericks v. Farmers Rel. Ins. Co. of N.J., 80 N.J. Super. 599, 602, 194 A.2d 497 (App.Div. 1963); White v. Austin, 172 N.J. Super. 451, 454-55, 412 A.2d 829 (Cty.D.Ct. 1980); Tell v. Cambridge Mut. Fire Ins. Co., 150 N.J. Super. 246, 253-54, 375 A.2d 315 (Cty.D.Ct. 1977). See also Tevis v. Tevis, 79 N.J. 422, 438-39, 400 A.2d 1189 (1979) (Pashman, J., dissenting); Howard v. West Jersey and Seashore R.R. Co., 102 N.J. Eq. 517, 520, 141 A. 755 (Ch. 1928), aff'd o.b., 104 N.J. Eq. 201, 144 A. 919 (E. & A. 1929). But see Lawrence v. Bauer Publishing & Printing Ltd., 78 N.J. 371, 376-77, 396 A.2d 569 (1979) (Pashman, J., concurring). Cf. Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 191-93, 412 A.2d 122 (1980); Kaczmarek v. New Jersey Turnpike Auth., 77 N.J. 329, 337-38, 390 A.2d 597 (1978); White v. Violent Crimes Compensation Board, 76 N.J. 368, 387, 388 A.2d 206 (1978); Peloso v. Hartford Fire Ins. Co., 56 N.J. 514, 521, 267 A.2d 498 (1970); Fernandi v. Strully, 35 N.J. 434, 439-51, 173 A.2d 277 (1961).
The doctrine was most recently discussed in W.V. Pangborne & Co. v. N.J. DOT, 116 N.J. 543, 562 A.2d 222 (1989). There, *379 the Supreme Court said that "equitable estoppel may be appropriate where `a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation.'" Id. at 553-54, 562 A.2d 222 (quoting Lawrence v. Bauer Publishing & Printing, Ltd., 78 N.J. at 376, 396 A.2d 569). Equitable estoppel was said to be applicable to "prevent a defendant from asserting the statute of limitations in contract actions that have entailed extensive settlement negotiations." W.V. Pangborne & Co. v. N.J. DOT, 116 N.J. at 556, 562 A.2d 222.
Applying these principles, it does not appear that Hyundai made any express representations or engaged in any overt conduct calculated to generate the expectation or belief on the part of Deluxe that it would forego or waive its defenses on the claim, including the statute of limitations. Nor does this case involve extensive settlement negotiations where, in the process of bargaining, a defendant intentionally lulls a plaintiff into believing litigation is not necessary. The simple and overriding fact is that Deluxe was less than diligent in pursuing and pressing its claims. See Younger v. Kracke, 236 N.J. Super. 595, 600, 566 A.2d 581 (Law Div. 1989). Deluxe first made Hyundai aware of its demands on February 8, 1989. At this juncture, the statute of limitations had already expired with respect to one-third of the invoices ultimately sued upon. By the time of Deluxe's follow-up letter on March 7, 1989, a cause of action on a fourth invoice was also beyond the four year limitations period. Aside from several brief exchanges, in which Deluxe vacillated respecting the number of invoices that remained unpaid, Deluxe did little or nothing to press its claim until November 15, 1989, at which time the statute had run as to the remaining invoices. We emphasize that Hyundai's acknowledgment of its debt, which is contested, allegedly occurred in 1991, some five and one-half years after the tender of its most recent invoice.
We concur in Judge Meehan's conclusion that Deluxe failed to establish a factual basis for invoking the doctrine of equitable *380 estoppel. We find no sound basis to disturb his determination or the result reached.
Affirmed.