890 A.2d 1022

PELLETTIERI, RABSTEIN AND ALTMAN, PLAINTIFF–
APPELLANT, v. MICHAEL PROTOPAPAS,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 17, 2006—Decided February 10, 2006.

Before Judges CUFF, LINTNER and GILROY.

*Mark K. Smith,* attorney for appellant.

No brief was filed on behalf of respondent.

The opinion of the court was delivered by

LINTNER, J.A.D.

This appeal arises from cross motions for summary judgment in an action brought by plaintiff law firm, Pellettieri, Rabstein and Altman, against its former client defendant, Michael Protopapas, for collection of fees. Plaintiff represented defendant in two separate matters, a matrimonial proceeding and a bankruptcy. Finding there were material questions of fact that had to be resolved in a plenary hearing, the judge denied plaintiff's motion regarding the fees rendered in defendant's bankruptcy action. Although the judge entered partial judgment for a portion of plaintiff's fees for services rendered in the matrimonial action, the vast majority of the amount sought was determined to be barred by the six-year statute of limitations,[1] *N.J.S.A.* 2A:14-1. The judge certified the judgment as final pursuant to *R.* 4:42-2 and *R.* 4:59-1.

Plaintiff appeals from the order granting partial summary judgment and the order denying its motion for summary judgment. We decline to address the order denying summary judgment because it is interlocutory and not cognizable on plaintiff's notice of appeal.[2] We turn our attention to the judgment limiting plaintiff's recovery.

---

[1] Plaintiff sought fees totaling $18,386.12 for services rendered in the matrimonial action. The judge found that all but $4045.82 was barred by the statute of limitations.

[2] On the claim for attorney fees arising from the service rendered in the bankruptcy action, the judge distinguished the retainer agreement from the matrimonial retainer and found plaintiff's claim not barred by the statute of limitations. Denying the plaintiff's motion, however, he determined that there remained a factual issue concerning the reasonableness of plaintiff's bills.

The central issue raised in this appeal, which has not previously been addressed in our jurisdiction, is when does the statute of limitations commence to run in an attorney's action against a client for fees pursuant to a retainer agreement calling for services at an hourly rate, billed on an interim basis, and payable within thirty days of receipt of the bill. The Law Division judge essentially found that the limitation period begins to run when payment is first overdue. We disagree with the judge's analysis and hold that the statute of limitations for attorney fees arising from a retainer agreement, permitting periodic hourly billing, commences when the services are concluded or attorney-client relationship is ended, whichever occurs first.

We combine the relevant facts and procedural history. Defendant entered into a retainer agreement with plaintiff on September 6, 1995, to substitute as his counsel in a contested divorce proceeding. In October 1995, defendant separately hired plaintiff to file a Chapter 7 bankruptcy petition on his behalf. A flat fee of $1500 plus costs was charged, pursuant to federal law. In March 1996, however, defendant's wife filed an adversary proceeding in bankruptcy, seeking to determine that certain matrimonial orders for support and equitable distribution were not dischargeable. Defendant then entered into a separate supplemental retainer agreement with plaintiff for the bankruptcy matter.[3]

The retainer agreement for the matrimonial matter provided for a minimum upfront retainer of $3500 to be applied to legal service and costs. The agreement further provided that if the matter was resolved before the initial retainer was exhausted the unused balance would be retained by the firm "since prompt resolution will have been the result of our experience and ability." Hourly billing rates agreed upon were $225 for partner, $175 for senior associate, $150 for associate and $60 for paralegal. The agree-

---

[3] Defendant never actually signed the supplemental retainer agreement, but made an initial payment of $5000 as required by the supplemental retainer agreement.

ment called for billing to be sent "approximately every sixty (60) days." Paragraph eight of the agreement provided:

8. *We reserve the right to terminate our attorney-client relationship for non-payment of fees, costs or failure to replenish the fee upon request. All bills which are submitted are due and payable when rendered.* If payment in full is not received within thirty days of the date of our bill, interest will accrue on the balance at the rate of 12 percent per annum. Ethics Opinion 446 (1980).

The agreement also provided that the retainer did not cover any services rendered after the date of the divorce.

As of January 30, 1996, defendant owed an accrued balance of $4206.40. On February 15, 1996, defendant tendered payment of $2500 toward his outstanding bill. By May 31, 1996, defendant owed an accrued balance of $12,202.76. On June 25, 1996, defendant remitted payment of $2000. By August 31, 1996, defendant owed $14,470.14. According to plaintiff, pursuant to discussion in September 1996, defendant agreed to pay the sum of $2000 per month to reduce the outstanding balance on his open account. Plaintiff claimed that defendant subsequently reaffirmed his commitment to pay $2000 per month.

On March 17, 1997, the partner handling the case wrote to defendant, indicating that he was disappointed that defendant had not made any payment on the outstanding balance the previous month. The letter advised defendant that the outstanding balance for both accounts was approximately $44,000. He reiterated that they had previously agreed to a payment plan. The letter also pointed out that plaintiff was holding $11,500, $7,795 of which was ordered to be held in escrow until the adversary proceeding with defendant's wife was concluded. The letter confirmed that defendant and plaintiff agreed to apply defendant's share of the amount held to reduce his outstanding bill. Plaintiff applied one-half of defendant's portion to the fee due on the matrimonial matter and one-half to the fee owed in the bankruptcy matter. The letter concluded:

This firm can no longer continue to represent you if you do not begin to make monthly payments to satisfy your bill. At a minimum, I will require you to make monthly payments of $4,000.00 starting on March 31, 1997 and continuing each month until the balance of the bill has been paid. Of course, I will be wiling to

discuss a discount on your bill if you agree to make a lump sum payment against your bill.

On March 18, 1997, plaintiff wrote defendant advising that all discovery in the matrimonial matter was to be completed by April 30, 1997, a trial date was scheduled for June 17, 1997, and his wife had rejected their last settlement proposal. Plaintiff continued to represent defendant. Plaintiff's records indicate that they assisted him in preparing a cross motion and response to a motion filed by his wife in early May 1997.

On June 11, 1997, the partner responsible wrote defendant the following:

> As I have been unable to make adequate financial arrangements with you, I have no choice but to terminate my relationship as your attorney with respect to the matrimonial action.
>
> Please sign the within Substitution of Attorney form and return to this office in the within envelope. If you fail to do so, we will have no choice but to file a Motion to Be Relieved of Counsel with the Court.
>
> Please be advised that the termination of our attorney-client relationship in no way affects the fees due and owing the firm. If a prompt payment is not made on some or part of the bill, I will have no alternative but to send the matter to collections.
>
> Thank you for your attention to this matter.

Plaintiff's last matrimonial billing entry, $8.42 for Airborne Express, was dated June 5, 1997. At that time, the total amount due from defendant was $18,386.12 for plaintiff's services in the matrimonial action.[4] According to plaintiff, defendant signed and filed the substitution of attorney.[5] Plaintiff was apparently granted leave to withdraw as counsel in June 1997.[6] A divorce judgment was entered sometime after June 1997.

---

[4] On June 16, 1997, defendant executed a Consent Order relieving plaintiff as his counsel in the bankruptcy proceeding. As of the last billing, the balance due plaintiff on the bankruptcy case totaled $10,226.42.

[5] The substitution of attorney is not provided, nor does the appellate brief indicate the date it was signed.

[6] This information is taken from the judge's oral decision of July 29, 2004. Although in its appellate appendix plaintiff provides a copy of a Consent Order

Plaintiff filed its complaint on March 20, 2003. Defendant answered and, on March 31, 2004, the parties participated in mandatory arbitration pursuant to *R.* 4:21A–1(a)(3). Plaintiff was awarded $36,498.86 and defendant rejected the award and filed a demand for trial de novo, *R.* 4:21A–6(b)(1). Plaintiff moved for summary judgment and defendant countered with a motion for summary judgment, claiming affirmative defenses of statute of limitations and bankruptcy discharge. Following oral argument on June 25, 2004, the judge reserved decision. On July 29, 2004, he rendered an oral decision. On December 6, 2004, the judge supplemented his oral opinion with a letter in which he provided his calculation for the amount of the partial judgment to be entered and certified it as final. Plaintiff filed its notice of appeal the following month.

On appeal, plaintiff asserts that the judge erred in determining that its claim for services in the matrimonial case was barred by the statute of limitations. It argues that a majority of those states that have addressed the issue have held that an attorney's right to recover compensation accrues on the date that the legal services are completed or the attorney-client relationship ceases. It maintains that the judge failed to take into consideration the special nature of an attorney-client relationship and the limitation placed on an attorney's ability to institute suit against a client until the attorney-client relationship ceases.

We begin by examining the judge's rationale in reaching his determination. The judge began his analysis citing *Deluxe Sales and Service Inc. v. Hyundai Engineering & Construction Co.*, 254 *N.J.Super.* 370, 374, 603 *A.*2d 552 (App.Div.1992), for the proposition that generally a cause of action for breach of a contract accrues when the breach occurs. He then cited plaintiff's reservation of the right to terminate the client relationship for non-

entered in the United States Bankruptcy Court permitting plaintiff to withdraw as counsel, a similar order from the Family Part for the matrimonial action is not provided.

payment and found that non-payment of any period bill was "in substance a material breach warranting termination." The judge rejected plaintiff's contention that it maintained an open running account with defendant such that each payment was an acknowledgement that the remaining balance was due and owing, thus excepting it from the six-year statute. *See Farbstein v. Eichmann*, 23 *N.J.Super.* 484, 93 *A.*2d 414 (App.Div.1952).

■ Accepting defendant's position that the statute of limitations began to run as each periodic payment became due, the judge relied upon *Metromedia Co. v. Hartz Mountain Associates*, 139 *N.J.* 532, 535, 655 *A.*2d 1379 (1995), which held that under the installment theory the six-year statute of limitations applied to monthly payments coming due each month and limited plaintiff to recover for monthly credits that commenced six years before the suit was filed. The judge accepted as a general proposition plaintiff's reliance on out-of-state authority that an attorney's right to collect fees accrues when the attorney client relationship ceases.[7] Quoting from 60 *A.L.R.* 2nd 1008, 1010, however, the judge found that the general rule did not apply to the plaintiff's matrimonial services because the retainer agreement fixed payment no later than thirty days after receipt of the bill. The quoted portion provides:

> Where an attorney renders continuous service, deemed to be entire, under an express or implied contract which does not fix the term of employment or the time for payment, the statute of limitations will not begin to run against a claim for fees and costs until the employment is ended, that is, the attorney-client relationship is dissolved by death, discharge, proper withdrawal, or completion of the services.
>
> [60 *A.L.R.* 2nd 1008, 1010.]

---

[7] The generally accepted rule is that an attorney's cause of action for legal fees accrues, for statute of limitation purposes, when the suit is completed or the attorney-client relationship is terminated, whichever happens first. *Lackner v. McKechney*, 252 *F.* 403, 408 (7th Cir.1918), *Phelps & Jones v. Patterson*, 25 *Ark.* 185, 186 (Ark.1867), *Atchison v. Hulse*, 107 *Cal.App.* 640, 644, 290 *P.* 916 (Cal.Ct.App.1930), *Walker v. Goodrich*, 16 *Ill.* 341, 343 (Ill.1855), *Lichty v. Hugus*, 55 *Pa.* 434, 434–37 (1867), *Loewe v. Mehlhorn*, 109 *Wash.* 124, 186 *P.* 643, 644 (1919).

Finding that the parties had entered into an alternative relationship, the judge also relied upon *Jenney v. Airtek Corp.*, 402 *Mass.* 152, 521 *N.E.*2d 388 (1988). Finally, the judge rejected plaintiff's contention that the statute is tolled during the attorney-client relationship because an attorney cannot sue a client but must first seek court approval to terminate the relationship absent the client's consent. Following the reasoning in *Metromedia*, the judge counted back six years from the time plaintiff filed its complaint and entered judgment for the period payments due as of December 5, 1996.[8]

■ We begin our analysis by examining the nature of an attorney-client relationship. Because " 'of the unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to the higher ethical and professional standards enunciated by our Supreme Court.' " *Estate of Pinter by Pinter v. McGee*, 293 *N.J.Super.* 119, 128, 679 *A.*2d 728 (App.Div.1996) (quoting *Cohen v. Radio–Electronics Officers Union, District 3*, 275 *N.J.Super.* 241, 259, 645 *A.*2d 1248 (App.Div.), *modified*, 146 *N.J.* 140, 679 *A.*2d 1188 (1996)). Thus " '[a] contract for legal services is not like other contracts.' " *Ibid.* The Supreme Court is responsible for regulating all aspects of the attorney-client relationship. *N.J. Const.* art. VI, § 2, ¶ 3; *In re LiVolsi*, 85 *N.J.* 576, 585, 428 *A.*2d 1268 (1981); *State v. Rush*, 46 *N.J.* 399, 416, 217 *A.*2d 441 (1966). The Court is "committed to preserving the fiduciary responsibility that lawyers owe their clients." *Cohen, supra*, 146 *N.J.* at 155, 679 *A.*2d 1188.

■ Analyzing the retainer agreement, the judge mistakenly relied on general contract principles to find that the plaintiff's cause of action accrued when defendant failed to pay the due

---

[8] The judge equitably tolled the statute of limitations 105 days, which included the thirty-day period the retainer agreement provided for payment and seventy-five days during which time plaintiff forbore from filing suit because defendant had indicated that he would consent to binding arbitration.

periodic bills. The statement in the agreement reserving the right to seek termination for non-payment was not equivalent to a commercial installment sales contract, which permits a creditor immediate redress. Unlike the general commercial transaction described in *Deluxe Sales and Service Inc.*, *supra*, 254 *N.J.Super.* at 374, 603 *A.*2d 552, where the "critical point" for the determination of accrual of the cause of action is the date when the payment of the invoice becomes due, an attorney's cause of action does not accrue based upon non-payment alone. More is needed. Specifically, absent completion of services under a retainer agreement, the attorney-client relationship must be terminated before plaintiff's cause of action accrues.

▉▉ The relevant portions of *RPC* 1.16 provide:

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if: (1) withdrawal can be accomplished without material adverse effect on the interests of the client;

. . . .

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause for withdrawal exists.

(c) *A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.* When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation. (emphasis added).

Our rules require client consent before an attorney can be relieved as counsel. *R.* 1:11–2(a)(1); *R.* 5:3–5(d)(1). Indeed, in family matters, an attorney may be denied leave to appeal, even with the client's consent, where a trial date has been set or Matrimonial Early Settlement Panel hearing has been held. *R.* 5:3–5(d)(2). Where financial burdens are asserted as the basis for leave to withdraw, a hearing may be required to determine the reasonableness of the request. *See Smith v. R.J. Reynolds Tobacco Co.*, 267 *N.J.Super.* 62, 64, 630 *A.*2d 820 (App.Div.1993). Simply stated, a lawyer does not have control when it comes to severing the

relationship, but must seek client consent and/or court approval, depending upon the circumstances.

■ By contrast, there is virtually no limitation on a client's ability to terminate the relationship. Our courts have "preserved the right of a client to discharge an unwanted attorney with or without cause." *Cohen, supra*, 275 *N.J.Super.* at 261, 645 *A.*2d 1248; *Coyle v. Bd. of Chosen Freeholders*, 170 *N.J.* 260, 266, 787 *A.*2d 881 (2002); *Taylor v. Bd. of Educ. of Hoboken*, 187 *N.J.Super.* 546, 553, 455 *A.*2d 552 (App.Div.) (holding an attorney has a duty to withdraw from employment when discharged by a client), *certif. denied*, 95 *N.J.* 228, 470 *A.*2d 441 (1983). *RPC* 1.16(a)(3) provides that a lawyer "shall withdraw from the representation of a client if . . . the lawyer is discharged."

We return to the judge's ruling. The judge relied on *Grunwald v. Bronkesh*, 131 *N.J.* 483, 621 *A.*2d 459 (1993), in rejecting plaintiff's contention that the existence of the attorney-client relationship tolls the statute of limitations because an attorney cannot sue a client. The Court in *Grunwald* held that the discovery rule applies to determine when the statute of limitations runs in a legal malpractice case. *Id.* at 494, 621 *A.*2d 459. Pointing out that a malpractice action can be stayed pending completion of the appeal process in the underlying case, *Grunwald* rejected the appellate panel's view that the statute of limitations is tolled during appeal. *Id.* at 499–500, 621 *A.*2d 459. Finding the decision in *Grunwald* analogous, the judge here reasoned,

if the continuous representation doctrine doesn't automatically toll the statute when the client might sue an attorney . . . it should not automatically toll the statute when an attorney must sue a client, particularly given the fact that the statute is a long one. It's six years. In this case, for example, [plaintiff] had plenty of time after its representation was concluded to bring its lawsuit without upsetting the important fiduciary relationship and confidences that it had with its client.

■ We disagree with the judge's conclusions. First and foremost, when terminating the attorney-client relationship, the lawyer is not on equal footing with the client. While a lawyer must seek client approval to withdraw, the client may discharge the attorney at will. Moreover, depending on the timing of the

request, there is no guarantee that an attorney will be permitted to withdraw even if there is client consent and grounds to do so under the Rules of Professional Conduct. *R.* 5:3–5(d) provides that after the fixing of a trial date, or prior to the fixing of such date where the client does not consent, "an attorney may withdraw from the action only by leave of court on motion on notice to all parties." [9] The rule goes on to outline several circumstances that the court should consider in deciding the motion. A lawyer's inability to sue a client before either obtaining consent of the client or leave of court to withdraw mandates a tolling of the statute. Stated another way, an attorney's cause of action to seek unpaid fees arising from a retainer agreement permitting periodic hourly billing does not arise until the matter is concluded or the attorney-client relationship is terminated, whichever occurs first. Here, plaintiff's cause of action accrued in June 2003.

Likewise, we part company with the judge's conclusion that plaintiff nevertheless "had plenty of time after its representation was concluded to bring its lawsuit." The complaint here was filed approximately five years and ten months after the attorney-client relationship ceased. Whether that time period is more than sufficient is of no moment. The limitation period remains six years. Plaintiff's complaint was thus filed within the period mandated by statute.

Finally, we comment on the judge's application of *Jenney, supra,* 402 *Mass.* 152, 521 *N.E.*2d 388, and his interpretation of the A.L.R. annotation and his finding that the parties entered into an alternative agreement. In *Jenney,* counsel withdrew from representation at the client's request and the client agreed to pay the accrued bill, which was over $15,000, within forty-five days. *Id.* at 389. The court found that the agreement to pay the balance due in forty-five days was a new agreement and, therefore, counsel's cause of action accrued at the end of the forty-five day

---

[9] The record discloses that a trial date was scheduled at the time counsel sought to withdraw.

154

period. *Id.* at 390. By contrast here, the retainer agreement simply stated when payment was due on interim bills rendered during the period of representation. We are convinced that the motion judge misapplied the A.L.R. quote. Here there was no alternative agreement, as in *Jenney*. Likewise there was no specific time fixed when payment was due following the completion of plaintiff's services or the termination of the relationship, as contemplated by the cited portion of the A.L.R.

We reverse the partial summary judgment limiting plaintiff's recovery and remand for further proceedings consistent with this opinion.