221 N.J. Super. 543 (1987)
535 A.2d 510
VAN NESS MOTORS, INC., PLAINTIFF-APPELLANT,
v.
DAVID VIKRAM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1987.
Decided November 17, 1987.
Before Judges ANTELL, DEIGHAN and LANDAU.
Nuzzo & Katz, attorneys for appellant (Martin David Katz, on the brief).
No brief was filed by respondent David Vikram, pro se.
The opinion of the court was delivered by LANDAU, J.A.D.
*544 This is an appeal from a judgment of the Law Division, Special Part, which dismissed the complaint of Van Ness Motors, Inc. against David Vikram for breach of contract damages arising out of Vikram's refusal to accept delivery of a new 1987 Dodge pickup truck after the parties had entered into a written contract.
Van Ness Motors, Inc. is an automobile dealer. It presented evidence setting forth a prima facie case. If accepted by the trial judge, the evidence would have established the existence and breach of a binding contract, payment by Vikram of a $100 deposit, and damages amounting to $1,263.39 in lost profits and $47 in expenses.
Vikram appeared pro se but never reached the point of presenting a defense. The trial judge dismissed the complaint at the conclusion of plaintiff's case, holding that inasmuch as the truck was sold to another purchaser for approximately the same price, there were no lost profit damages. He concluded that the deposit covered the plaintiff's out of pocket expenses.
We disagree with the trial judge's conclusion respecting the lost profit damages. Though not cited before the trial judge or on appeal, this case is governed by § 2-708 of the Uniform Commercial Code (N.J.S.A. 12A:2-708) which provides:
(1) Subject to subsection (2) and to the provisions of this Chapter with respect to proof of market price (12A:2-723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Chapter (12A:2-710), but less expenses saved in consequence of the buyer's breach.
(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Chapter (12A-2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale. L. 1961, c. 120, § 2-708.
*545 As explained in the New Jersey Study Comment,[1] § 708(2) was designed to provide to a dealer-seller of standardized goods in unlimited supply the additional relief of recognizing that "had the breaching buyer performed, the dealer would have made two sales instead of one." As the New Jersey comment points out, this may vary from the rule developed under the Uniform Sales Act. While the "due credit" language contained in subparagraph two might arguably raise some doubt respecting the construction placed upon this subsection by the New Jersey commentators, subsequent interpretations by courts in other jurisdictions, and later commentators have plainly indicated that the intention of this clause was to protect a so-called "lost volume" seller, and that a full credit for proceeds of a resale would be inconsistent with this intent. There are no reported New Jersey cases on the subject. As stated in Snyder v. Herbert Greenbaum & Assoc., Inc., 38 Md. App. 144, 380 A.2d 618, 625 (Ct.Spec.App. 1977):
The whole concept of lost volume status is that the sale of the goods to the resale purchaser could have been made with other goods had there been no breach. In essence, the original sale and the second sale are independent events, becoming related only after breach, as the original sale goods are applied to the second sale. To require a credit for the proceeds of resale is to deny the essential element that entitles the lost volume seller to § 2-708(2) in the first place  the mutual independence of the contract and the resale.
In Snyder, it was also held that the seller must sustain the burden of establishing that he is in fact a lost volume seller, and if he fails to do so he will be deemed an ordinary seller who must give credit for the proceeds of a resale in determining lost profit damages for the breach. See also Capital Steel Co. v. Foster & Creighton Co., 264 Ark. 683, 574 S.W.2d 256 (1978); Neri v. Retail Marine Corp., 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311 (1972). For a general discussion, see White & Summers, Uniform Commercial Code (2 ed. West 1980), § 7-8, § 7-9 at 274-276; Anderson, Uniform Commercial *546 Code (2 ed. 1971), § 2-708; 11 at 395. Recently, in Islamic Republic of Iran v. Boeing Co., 771 F.2d 1279, 1290 (9th Cir.1985), the 9th Circuit Court of Appeals recognized that
Most other jurisdictions have held that to qualify as a `lost volume' seller under Section 2-708(2), the seller needs to show only that it could have supplied both the breaching purchaser and the resale purchaser. [Citing cases]
We are in agreement with the comments of the New Jersey Commission, and the rationale of the cited authorities, and conclude that it was reversible error to reject the effort by Van Ness Motors, Inc. to establish its lost profit merely because it was able to resell the truck under contract for substantially the same price.
Inasmuch as the trial judge's early ruling in this case had the effect of obviating the necessity for Vikram to present a defense, he should be afforded the opportunity to challenge the existence of the contract, its breach, or the method of computation of lost profits. Similarly, plaintiff should be allowed to demonstrate that it was a "lost volume" seller in these circumstances.
Reversed and remanded for proceedings consistent with the foregoing. We do not retain jurisdiction.
NOTES
[1] Comment of the New Jersey Commission to Study and Report upon the Uniform Commercial Code to N.J.S.A. 12A:2-708.