832 A.2d 931

P.F.I., INC., D/B/A NORTHWEST PETROLEUM, PLAINTIFF–RE-SPONDENT/CROSS–APPELLANT, v. NADEZDA KULIS, INDI-VIDUALLY AND T/A DAN'S TEXACO; THE ESTATE OF DAN-ILO KULIS, INDIVIDUALLY AND T/A DAN'S TEXACO, JOINTLY AND INDIVIDUALLY, DEFENDANT–APPEL-LANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 17, 2003—Decided October 10, 2003.

Before Judges KESTIN, AXELRAD, and WINKELSTEIN.

*Nicholas Albano, III,* Caldwell, argued the cause for appellant (*Nicholas Albano, Jr.,* attorney; *Nicholas Albano, III,* of counsel; *Nicholas Albano Jr.,* and *Nicholas Albano, III,* on the brief).

*Colleen M. Cunningham* argued the cause for respondent (*Lucas & Gaus,* attorneys; *Janet C. Lucas,* on the brief).

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

Defendant, Nadezda Kulis, appeals a judgment for plaintiff, P.F.I., Inc., on a contract claim, following a bench trial. She argues the claim is barred by the statute of limitations; the death of her husband, Danilo Kulis, made the contract commercially impracticable; and the court erred in awarding lost profits. Plaintiff cross-appeals the court's denial of pre-judgment interest. We affirm the appeal and cross-appeal with respect to the $56,149.90 judgment for unpaid gasoline invoices and the balance due on loans substantially for the reasons articulated by the court in its oral decisions. We reverse the award of $30,415.85 for lost profits.

Defendant and her late husband operated a gasoline station and automobile repair shop. Plaintiff is a gasoline wholesaler that negotiates contracts with service stations and supplies stations with Texaco gasoline. On October 1, 1991, the parties [1] executed a product sales agreement and rider by which plaintiff would supply gasoline to defendant for a five-year period, with defendant required to purchase a minimum of 2,000,000 gallons "in substantially equal monthly quantities" during that period, or thereafter until the minimum purchase was attained. The agreement also provided for interest-free financing of improvements to the service station in the amount of $40,000, to be paid off at the rate of two

---

[1] The supplier was Northville Industries, trading as Northwest Petroleum, P.F.I.'s predecessor in interest. Danilo Kulis was also a party to the contract, but for purposes of this opinion, we are only referring to his wife, Nadezda, as defendant.

cents per gallon from the gasoline sales. Sometime thereafter, plaintiff advanced defendant an emergency loan of approximately $26,000 for environmental clean-up, which was to be repaid in 1993.

Defendant's husband died in 1994, and she closed the automobile repair part of the service station. As a result, gasoline sales declined. Defendant could no longer purchase the quantities of gasoline she was obligated to receive under the sales agreement, and was unable to make the payments on the construction loan as anticipated from the gasoline sales. Defendant made some payments on account through May 23, 1999. In January 2000, defendant apparently purchased another brand of gasoline which she commingled with the Texaco fuel; plaintiff ceased delivery and demanded full payment of the outstanding account balance.

On August 30, 2000, plaintiff filed suit for unpaid invoices, balance of the loans, and also sought lost profits. Following a bench trial, the court rendered its decision on the record on January 29, 2002, with two supplemental oral entries on March 19 and 25, 2002. By orders of February 20 and March 18, 2002, judgment was entered in favor of plaintiff in the amount of $56,149.90 for unpaid gasoline invoices and the outstanding balance of the loans, and $30,415.95 for lost profits. The court found that a binding contract had been created for the sale of gasoline, that plaintiff had advanced $66,629 in construction and environmental clean-up loans, and that defendant had breached the product sales agreement. The court declined to apply the four-year statute of limitations for the sale of goods, *N.J.S.A.* 12A:2–725, to bar plaintiff's cause of action, determining that

the parties continued to do business up to March 31, 2000 and that payments made by Defendant Mrs. Kulis towards the unpaid balance owed Plaintiff, in particular, a large payment of $20,000 on May 23, 1999, and numerous discussions and meetings with Plaintiffs to attempt to repay the unpaid balance was an expressed acknowledgment by Defendant Mrs. Kulis and these actions clearly eliminate the bar of the Statute of Limitations from application to Plaintiff's lawsuit.

The court relied on *Van Ness Motors, Inc. v. Vikram*, 221 *N.J.Super.* 543, 535 *A.*2d 510 (App.Div.1987), and found that

plaintiff was a lost volume seller and entitled to an anticipated lost profit of five cents per gallon on 608,319 gallons, the outstanding minimum purchase obligation under the contract, in addition to the outstanding contractual balance. The court further found, "after evaluating all of the evidence and the testimony of the parties," including plaintiff's waiver of defendant's breaches, continuation of the business relationship, and the fact that the loans were non-interest bearing, the "equities of this case precluded the allowance of pre-judgment interest to the plaintiff. . . ."

We agree that under the unique circumstances of this case, defendant's conduct demonstrated an acknowledgement of the entire debt and tolled the four-year statute of limitations as a defense to this action. *See Deluxe Sales and Service, Inc. v. Hyundai Eng'g & Constr. Co.*, 254 *N.J.Super.* 370, 603 *A.2d* 552 (App.Div.1992); *Farbstein v. Eichmann*, 23 *N.J.Super.* 484, 93 *A.2d* 414 (App.Div.1952). This case is more akin to a running book account with partial payments made as part of a larger debt, rather than payments made against a pre-existing debt. Both the construction loan and gasoline shipments were part of a single integrated agreement between the parties. Plaintiff allocated half of defendant's $20,000 payment made on May 23, 1999 to the gasoline account receivable balance and half to the outstanding loan balance, without any objection by defendant. Moreover, the parties' discussions regarding payment of the account and their ongoing business relationship through January 2000 extended the term of the contract, including defendant's payment obligation for the entire debt.

Nor can defendant successfully prevail on a defense of impracticability of contract due to the death of her husband in 1994. *See Restatement (Second) of Contracts* § 261 and § 262 (1981); *Duff v. Trenton Beverage Co.*, 4 *N.J.* 595, 606, 73 *A.2d* 578 (1950). Both defendant and her husband negotiated and executed the contract, and defendant acknowledged she was aware of her obligations under the agreement. Defendant was co-owner of the service station, and assumed an active role in its management and

day-to-day operations. Moreover, although the business slowed down after Danilo's death and the closing of the automobile repair shop, defendant continued to purchase gasoline from plaintiff and operate the station pursuant to the product sales agreement for almost six years.

The record does not support plaintiff's entitlement to lost profits based on defendant's inability to make the minimum purchase of 2,000,000 gallons under the contract. This element of damages is not provided for in the contract and, based on the parties' relationship, did not appear to be contemplated by the parties. Moreover, plaintiff failed to demonstrate it was a lost volume seller and that normative contract damages were inadequate to put it in as good a position as performance would have done. Additionally, the testimony presented by plaintiff is insufficient to support the calculation of damages based on an anticipated profit margin of five cents per gallon.

The trial court's reliance upon *Van Ness, supra,* for its lost profit award to plaintiff, is misplaced. In *Van Ness,* an automobile dealership brought suit for breach of contract damages against a customer who refused to accept delivery of a truck after the parties had entered into a written contract. *Van Ness, supra,* 221 *N.J.Super.* at 544, 535 *A.2d* 510. The trial court dismissed the complaint at the conclusion of the dealership's case, holding there were no lost profit damages because the truck was sold to another purchaser for approximately the same price. *Ibid.* We discussed the concept of lost volume status, *i.e.,* that a dealer-seller of standardized goods in unlimited supply, would have made two sales instead of one if the breaching buyer had performed. *Id.* at 545, 535 *A.2d* 510. We also recognized that the seller must sustain the burden of establishing that he is a lost volume seller. *Ibid.* We reversed and remanded to allow plaintiff to demonstrate it was a lost volume seller and entitled to lost profit damages under *U.C.C.* § 2–708(2) (1989), *N.J.S.A.* 12A:2–708(2), and for the customer to present a defense to the contract and damage claim. *Id.* at 546, 535 *A.2d* 510.

■ As our Supreme Court recognized in *Sons of Thunder, Inc. v. Borden, Inc.*, 148 *N.J.* 396, 427, 690 *A.*2d 575 (1997), " '[i]n order to recover for lost profits under [Section 2–708(2) ], the plaintiffs must prove the amount of damages with a reasonable degree of certainty, that the wrongful acts of the defendant caused the loss of profit, and that the profits were reasonably within the contemplation of the parties at the time the contract was entered into.' *Unique Systems, Inc. v. Zotos Int'l, Inc.*, 622 *F.*2d 373, 378, 379 (8th Cir.1980); *In re Merritt Logan, Inc.*, 901 *F.*2d 349, 359 (3rd Cir.1990)." *See also Magnet Res., Inc. v. Summit MRI, Inc.*, 318 *N.J.Super.* 275, 293, 723 *A.*2d 976 (App.Div.1998).

■ In the case before us, lost profits were not anticipated by the contract. The parties' contract provided for interest-free loans and made no mention of profit, let alone a guarantee of profit. Where the terms of an agreement are clear, we ordinarily will not make a better deal for a party than that party voluntarily made for itself, particularly in a commercial, arms-length setting. *E.g., Chemical Bank of New Jersey Nat'l. Ass'n v. Bailey,* 296 *N.J.Super.* 515, 527, 687 *A.*2d 316 (App.Div.), *certif. denied,* 150 *N.J.* 28, 695 *A.*2d 671 (1997); *Sons of Thunder, Inc. v. Borden, Inc.,* 285 *N.J.Super.* 27, 48–49, 666 *A.*2d 549 (App.Div.1995), *overruled on other grounds,* 148 *N.J.* 396, 690 *A.*2d 575 (1997). Moreover, to a large extent, the parties were in a joint venture for the sale of gasoline—with plaintiff advancing funds towards improvements and environmental clean-up of the station with the construction loan being paid from the sale—rather than a "standard" buyer-seller relationship.

■ Additionally, lost profits are available under *U.C.C.* § 2–708 (1989), *N.J.S.A.* 12A:2–708(2), only if the normative contract remedy would not place the seller in as good a position as performance would have done. Contrary to plaintiff's and the trial court's interpretation, subsection (2) is not an automatic remedy for the buyer's non-acceptance or repudiation of the goods. *N.J.S.A.* 12A:2–708(2) provides:

> If the measure of damages provided in subsection(1) [difference between the market price at the time and place for tender and the unpaid contract price

together with any incidental damages ..., but less expenses saved in consequence of the buyer's breach] is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Chapter (12A:2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Plaintiff failed to sustain its burden to demonstrate its status as a lost volume seller, the inadequacy of damages under *N.J.S.A.* 12A:2-708(1), and its actual lost profits. The record is devoid of any testimony by plaintiff's representatives that it had an unlimited supply of gasoline, an unlimited market, and had defendant purchased the minimum gallons of fuel required under the product sales agreement, it would have made two sales instead of one. Charles E. Fears, one of plaintiff's salesmen, merely testified that he could buy all the gas he could sell. There was no testimony that additional buyers were available or that additional sales were made. He also testified about the competitiveness of the market, and that at the time he sought defendant's business, he was aware that other companies were also soliciting its business. Nor was there any testimony as to the inadequacy of *N.J.S.A.* 12A:2-708(1) damages. Moreover, the trial judge made no finding as to any of these essential elements of lost profit damages.

Even if plaintiff had demonstrated a basis for entitlement to lost profit damages, its evidence was insufficient to prove the amount with reasonable certainty. *Sons of Thunder, Inc., supra,* 148 *N.J.* at 427, 690 *A.2d* 575; *V.A.L. Floors, Inc. v. Westminster Communities, Inc.,* 355 *N.J.Super.* 416, 425, 810 *A.2d* 625 (App.Div.2002). Fears testified that in negotiating the contract, he anticipated a profit of approximately five cents a gallon, calculated as follows:

I took a typical, an average gross margin, defined as my sale price to the customer minus my cost of goods sold, goods sold of approximately 12 and a half cents a gallon. I allocated two cents a gallon, two cents a gallon of freight, five and a half cents a gallon marketing and administrative expenses.... And included in that five and a half cents a gallon would be two cents a gallon amortization of the Product Sales Agreement pursuant to rider one, the rider mentioning the $40,000.... Twelve and a half minus seven and a half equals five cents per gallon.

Plaintiff produced no testimony or documentary evidence to support its claim of actual lost profits on the 608,319 gallons remain-

ing unpurchased by defendant under the product sales agreement. Anticipated profits that are too speculative or uncertain can not be recovered. *Stanley Co. of Am. v. Hercules Powder Co.,* 16 *N.J.* 295, 314, 108 *A.*2d 616 (1954).

We see no need for an extensive discussion of plaintiff's cross-appeal from the trial court's denial of pre-judgment interest on plaintiff's successful claim. Pre-judgment interest in non-tort claims is not a matter of right but one based on equitable principles. *See Bak–A–Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc.,* 69 *N.J.* 123, 131, 351 *A.*2d 349 (1976). The trial court is vested with substantial discretion to award or deny pre-judgment interest in contract cases, and its exercise of such discretion will be sustained on appeal unless it constitutes a manifest denial of justice. *Ibid.; Society Hill Condo. Assn. v. Society Hill Assoc.,* 347 *N.J.Super.* 163, 178, 789 *A.*2d 138 (App.Div.2002); *Coastal Group v. Dryvit Systems,* 274 *N.J.Super.* 171, 181–82, 643 *A.*2d 649 (App.Div.1994), *remanded on other grounds,* 147 *N.J.* 574, 688 *A.*2d 1050 (1997). We discern no abuse of discretion in this case.

Affirmed in part; reversed in part; judgment is modified in accordance with this opinion.