In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2423

IN RE: SWEPORTS, LTD.,

*Debtor-Appellee.*

APPEAL OF: MUCH SHELIST, P.C., *et al.*,

*Creditors-Appellants.*

Appeal from the United States Bankruptcy Court for the
Northern District of Illinois, Eastern Division.
No. 12-14254 — **A. Benjamin Goldgar**, *Bankruptcy Judge.*

ARGUED DECEMBER 12, 2014 — DECIDED JANUARY 9, 2015

Before POSNER, WILLIAMS, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* Before us is a direct appeal from the bankruptcy court for the Northern District of Illinois pursuant to 28 U.S.C. § 158(d)(2). The question it presents is the authority of a bankruptcy judge to make an award of fees after dismissal of the bankruptcy proceeding and the consequent revesting of the assets of the debtor's estate in the debtor. 11 U.S.C. § 349(b)(3). The fees in question are sought by the counsel (Neal L. Wolf) for, and a financial advisor (Pierre Benoit, whom Wolf also represents) to, an Offi-

cial Committee of Unsecured Creditors that the U.S. Trustee had appointed during the bankruptcy proceeding. 11 U.S.C. § 1102(a)(1). Wolf's law firms (he has been a member of two law firms during this litigation) and Benoit's financial advisory firm (Pierre Benoit & Associates, Inc.) are also parties to the appeal, but seek no additional relief and can therefore be ignored. To simplify the opinion further we'll pretend that Wolf is the only appellant.

The bankruptcy judge denied the awards on the ground that, the bankruptcy having been dismissed, he had no jurisdiction to make such awards. He reasoned that the awards could be paid only out of the assets of the debtor's estate, and there were no such assets now that the bankruptcy had been dismissed and consequently all the assets of the debtor's estate had been returned to the debtor. There is, however, as we'll see, a critical difference, missed by the bankruptcy judge, between determining an entitlement to fees and ordering payment of fees.

Sweports, Ltd., owns patents and a subsidiary called UMF Corporation that manufactures antimicrobial cleaning products; UMF apparently is Sweports' principal asset. In April 2012 several judgment creditors of Sweports, represented by attorney Wolf, petitioned the bankruptcy court in Chicago to place Sweports in Chapter 11 bankruptcy (reorganization). Sweports consented, and became the debtor in possession, with its assets therefore constituting a debtor's estate in bankruptcy. Sweports objected to Wolf's retention as counsel to the Official Committee of Unsecured Creditors, on the ground that he had a conflict of interest because he was continuing to represent several of Sweports' judgment creditors. But the bankruptcy judge ruled that there was no

conflict. Judgment creditors are unsecured; Wolf did not represent any judgment creditors whose claims were adverse to those of the unsecured creditors represented by the Official Committee—indeed it's unclear whether Wolf was still representing any judgment creditors or other creditors when he agreed to represent the Official Committee.

Both Sweports and the Official Committee filed plans of reorganization. The bankruptcy judge rejected the plans. The U.S. Trustee then moved that Sweports' bankruptcy either be converted from Chapter 11 to Chapter 7 (liquidation) or dismissed. Neither Sweports nor the creditors favored conversion, and so the bankruptcy judge dismissed the bankruptcy.

That was on April 30, 2014, and several weeks later Wolf filed with the bankruptcy court a motion seeking an award of attorney's fees and expenses totaling some $780,000 (we're rounding off all dollar figures to the nearest $10,000), all for his work for the Official Committee of Unsecured Creditors. This was his second fee request for that work. An interim request for an award of fees and expenses of some $410,000 had been made and granted earlier, while Sweports was in bankruptcy, but very little of it had been paid. As a result Wolf's final request, superseding the earlier request, sought a total of more than $1.13 million—plus some $100,000 in fees and expenses for Benoit, the financial consultant whom Wolf was and is representing.

The creditors wanted the bankruptcy dismissed because they would of course remain creditors of Sweports and thought they would do better suing it in state court immediately rather than waiting to scramble for pieces of it if it were liquidated. That was not an option for Wolf except with re-

spect to his interim request for fees, since that had been granted before the bankruptcy proceeding was dismissed (and in fact Wolf has sued Sweports in an Illinois state court for the unpaid portion of those fees). Until and unless he received a fee award from the bankruptcy judge, the remaining amount of fees and expenses that he was seeking would not be a debt of Sweports, and so he would have no basis for pursuing a claim against the company in state court. Wolf had not become a creditor of Sweports as a result of being hired by the Official Committee of Unsecured Creditors, except with respect to the interim fee award, an administrative expense that the bankruptcy judge had already—before dismissing the bankruptcy—ordered Sweports to pay. With the dismissal of the bankruptcy, Sweports became liable in the ordinary way (that is, outside of bankruptcy proceedings) to pay the debts that it had had as debtor in possession. For "on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy. After an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts." *In re Income Property Builders, Inc.*, 699 F.2d 963, 965 (9th Cir. 1982). The problem for Wolf is that the bankruptcy judge did not order Sweports to pay the rest of the fee that Wolf had earned for his work for the Official Committee.

The bankruptcy judge refused to issue such an order not because he thought Wolf's claim to the rest of the fee without merit, but because he thought that having dismissed the bankruptcy he had no authority to issue any further order relating to it. There was no longer a debtor in possession, no longer a debtor's estate in bankruptcy, no longer any assets under the control of the bankruptcy court, and therefore, he

decided, no possible relief that he could grant Wolf. That was incorrect. It's true that with the bankruptcy dismissed the bankruptcy judge could no longer disburse assets of the debtor's estate to anyone; it had no assets; it was defunct. But the judge could determine that Wolf had a valid claim to a fee in the amount he was seeking. Such a ruling would create a debt of Sweports to Wolf, and if Sweports refused (as Wolf expects it would) to pay, he could, like any other creditor, sue Sweports in state court. Sweports thus is wrong to say as it does in its brief "that in the absence of an estate [in bankruptcy] to pay fees and expenses, the Bankruptcy Court could not grant meaningful relief to Wolf." An order that Wolf could take into state court as a basis for obtaining damages from Sweports would be meaningful relief. There would be nothing novel about such an order. Almost every damages suit that is resolved in favor of the plaintiff ends not with a disbursement of money but with a judgment that establishes a debt. If the defendant fails to pay, the plaintiff must initiate a further proceeding to collect the judgment debt. The judgment to which Wolf was and is entitled would merely establish a debt; to collect it he will undoubtedly have to initiate a collection suit in state court.

The Bankruptcy Code authorizes fee-and-expense awards to persons who provide assistance in a bankruptcy proceeding, see 11 U.S.C. § 330(a)(1), and the Judicial Code grants federal jurisdiction over all civil proceedings "arising in or related to cases under" the Bankruptcy Code. 28 U.S.C. § 1334(b). Wolf has a civil proceeding, arising in *and* related to Sweports' bankruptcy, in which he is seeking from a bankruptcy court an order that he can use to obtain cash elsewhere. The order, if granted, would confer a real value.

It would therefore not be "moot," as the bankruptcy judge said in embroidering his jurisdictional ruling.

Had Wolf sought such an order a few weeks earlier, before the bankruptcy proceeding was dismissed, the judge would doubtless have issued it. What caused Wolf to delay, he explains, was his ethical obligations to the unsecured creditors that he represented as counsel to the Official Committee of Unsecured Creditors. *All* Sweports' unsecured creditors wanted the bankruptcy proceeding dismissed posthaste so that they could pursue their state remedies against Sweports, which they couldn't do until the proceeding was dismissed because until then litigation against Sweports in other courts was stayed. 11 U.S.C. §§ 362(a)(1), (2). Had Wolf moved before dismissal of the bankruptcy for his fee award for services to the Official Committee of Unsecured Creditors, dismissal of the bankruptcy would have been delayed while the bankruptcy judge considered his request and Sweports' opposition. The delay would have hurt the unsecured creditors—Wolf's direct or indirect clients. So as not to delay the dismissal of the bankruptcy, he held off on requesting an order for payment of the fees he was due.

The postponement in filing his request until the bankruptcy was dismissed hurt no one. It merely gave Sweports a shot at a windfall—eliminating, by appealing to a wooden concept of jurisdiction, a debt that it had incurred. A court loses jurisdiction over a case when it issues a final judgment, which is to say a judgment that resolves the controversy between the parties. The order dismissing the bankruptcy didn't do that. There was a loose end, left dangling—Wolf's claim for fees. He needed that ruling to be able to enforce the entitlement in state court.

There is no novelty to the idea that a court has besides its ordinary jurisdiction a "clean-up" jurisdiction ("ancillary" jurisdiction, it is commonly called) to take care of minor loose ends. It is implicit in two of the statutory provisions we cited earlier, 11 U.S.C. § 330(a)(1) and 28 U.S.C. § 1334(b). Most though not all cases recognize that bankruptcy courts have such authority. Compare *In re 5900 Associates, Inc.*, 468 F.3d 326, 330–31 (6th Cir. 2006); *In re Taylor*, 884 F.2d 478, 481 (9th Cir. 1989), and *In re Dahlquist*, 751 F.2d 295, 298–99 (8th Cir. 1985), with *In re Advanced Computer Technology Act, Inc.*, 2013 WL 5661203 (D. Puerto Rico Oct. 15, 2013), and *Iannini v. Winnecour*, 487 B.R. 434, 438–40 (W.D. Pa. 2012). If the bankruptcy judge in this case, realizing that a request for fees would be coming from Wolf, had delayed the bankruptcy, the creditors would as we said have been hurt. So a sensible course of action was to dismiss the bankruptcy and leave for later a determination of how much Sweports owed Wolf. An alternative would have been to lift the automatic stay of suits by creditors of a debtor that is in bankruptcy. The creditors, including Wolf, could then have proceeded with efforts to collect their debts even though the bankruptcy hadn't yet been dismissed. But there's no reason why dismissing the bankruptcy and leaving for later a determination by the bankruptcy judge of how much Sweports owed Wolf should be thought an alternative outside the judge's jurisdiction. The judge suggested no reason—just the bare, formalist conclusion that with dismissal he had lost jurisdiction to do *anything* further that would be related to the bankruptcy.

Sweports argues that Wolf should have asked the bankruptcy judge to "reserve" jurisdiction over his fee request when the judge dismissed the bankruptcy. The bankruptcy

judge made clear that he would refuse to reserve jurisdiction. And we can't see what an explicit reservation would have done for anybody.

We're left with no reason to think that Wolf should be disentitled, whether as a matter of statutory or constitutional interpretation or good sense, to pursue in the bankruptcy court his request for an award (not payment, but a determination of what he is owed) of fees for his services to the Official Committee of Unsecured Creditors.

REVERSED AND REMANDED.