**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3774-17T3
              A-4069-17T3

THOMAS E. HEDENBERG and
ESTATE OF RAY H. TRESCH,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

ALBERT A. CIARDI, III and
CIARDI, CIARDI & ASTIN,

      Defendants/Third-Party
      Plaintiffs-Respondents/
      Cross-Appellants,

v.

GROVE STREET REALTY
URBAN RENEWAL, LLC,

      Third-Party Defendant.

_____

THOMAS E. HEDENBERG and
RAY H. TRESCH,

      Plaintiffs,

v.

ALBERT A. CIARDI, III and
CIARDI, CIARDI & ASTIN,

Defendants/Third-Party
Plaintiffs-Appellants,

v.

GROVE STREET REALTY
URBAN RENEWAL, LLC,

Third-Party Defendant/
Respondent.

_____

Argued September 12, 2019 – Decided November 22, 2019

Before Judges Alvarez, Nugent and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0309-14.

Peter J. Leyh argued the cause for appellants/cross-respondents Thomas E. Hedenberg and Estate of Ray H. Tresch in A-3774-17 (Braverman Kaskey PC, attorneys; Peter J. Leyh and David Larry Braverman, on the briefs).

Candidus K. Dougherty argued the cause for respondents/cross-appellants Albert A. Ciardi, III and Ciardi, Ciardi & Astin in A-3774-17 and appellants Albert A. Ciardi, III and Ciardi, Ciardi & Astin in A-4069-17 (Swartz Campbell, LLC, attorneys; Jeffrey B. Mc Carron, Candidus K. Dougherty and Caryn Jennifer Steiger, on the briefs).

Seth Neil Broder argued the cause for respondent Grove Street Realty Urban Renewal, LLC in A-4069-17

2

(Broder Law Group, PC, attorneys; Seth Neil Broder, on the brief).

PER CURIAM

We consolidate these back-to-back appeals involving the same parties and related claims. In A-3774-17, plaintiffs, Thomas E. Hedenberg and Ray H. Tresch[1], appeal the December 12, 2017 order granting summary judgment to defendants, Albert A. Ciardi III (Cardi) and Ciardi, Ciardi & Astin (jointly the Ciardi defendants) and dismissing plaintiffs' legal malpractice complaint against defendants, the January 23, 2018 order denying their motion for reconsideration, and the April 18, 2018 order awarding attorney's fees to the Ciardi defendants. Ciardi cross-appeals orders entered on September 11, 2015, and October 23, 2015.

In appeal A-4069-17, the Ciardi defendants appeal from the April 18, 2018 judgment awarding them $8293.36 in attorney's fees on their $116,672.36 claim. They contend the trial court erred by granting partial summary judgment on March 9, 2018, to third-party defendant Grove Street Realty Urban Renewal LLC (Grove Street). That order dismissed the Ciardi defendants' third-party

---

[1] Both plaintiffs passed away prior to the conclusion of these appeals.

complaint for indemnification against Grove Street and limited their claim for attorney's fees to those not related to Grove Street's Chapter Eleven bankruptcy.

For reasons that follow, in A-3774-17, we affirm the orders that dismissed plaintiffs' legal malpractice complaint because there were no genuine issues of material fact about whether an attorney-client relationship existed between the Ciardi defendants and plaintiffs. We conclude the cross-appeal in A-3774-17 is moot in light of our affirmance. In A-4069-17, we affirm the trial court's order that the Ciardi defendants' claim for attorney's fees for their representation of Grove Street in bankruptcy should be resolved in the first instance by the bankruptcy court. We also affirm the non-bankruptcy related fee.

Appeal A-3774-17

I.

A.

In February 2014, plaintiffs filed a complaint for compensatory damages against the Ciardi defendants for legal malpractice alleging that the Ciardi defendants represented them individually in connection with a failed real estate construction project. Count One asserted that plaintiffs relied on legal guidance provided by the Ciardi defendants, who owed a duty of care, which was breached. Count Two further alleged the Ciardi defendants breached their

fiduciary duty to plaintiffs. In July 2014, after their motion to dismiss was denied, the Ciardi defendants filed an answer and asserted affirmative defenses.[2]

In August 2017, the Ciardi defendants filed a motion for summary judgment to dismiss the complaint. They contended they represented Grove Street pursuant to a written retention agreement, but not plaintiffs individually. Plaintiffs opposed the motion, asserting that the Ciardi defendants committed legal malpractice and breached their fiduciary duties by not advising them that Grove Street's bankruptcy filing would trigger personal liability for them under the "Limited Joinder" of Grove Street's loan obligation.

The trial court granted the Ciardi defendants' summary judgment motion on December 12, 2017, and dismissed plaintiffs' complaint. Plaintiffs' motion for reconsideration was denied on January 23, 2018. We denied leave to appeal. On April 18, 2018, a judgment for attorney's fees was entered in favor of the

---

[2] In October 2014, the Ciardi defendants filed a third-party complaint against Grove Street. We address the third-party complaint in the portion of our opinion on A-4069-17.

On September 11, 2015, the trial court dismissed the Ciardi defendants' affirmative defenses eighteen, nineteen and twenty without prejudice because depositions had not been taken at that time. On October 23, 2015, the trial court denied reconsideration. Those orders are the subject of the cross-appeal in A-3774-17.

Ciardi defendants and against Grove Street. Plaintiffs' filed a notice of appeal and Ciardi's cross-appeal followed.

B.

Plaintiffs, the managing members, owned an eighty-six percent interest in Grove Street, a limited liability company formed in 2002.[3] In 2007, Grove Street entered into a Loan Agreement with GE Business Financial Services, Inc. f/k/a Merrill Lynch Business Financial Services, Inc. (GE) in which Grove Street borrowed $32,328,683 to construct luxury, age-restricted apartments known as "the Cove at Riverwinds" development. Grove Street executed two promissory notes in favor of GE with a maturity date of April 30, 2010. A mortgage and security agreement was also executed by Grove Street. Plaintiffs individually signed a performance and completion guaranty personally guaranteeing the completion of the project.

Additionally, plaintiffs signed a "Limited Joinder" on October 16, 2007 as part of the loan package. In that document, plaintiffs agreed to repay Grove Street's loan in the event that Grove Street filed for bankruptcy. Specifically,

> [e]ach [p]rincipal [of Grove Street], jointly and severally, shall be personally liable for the following (the '[r]etained [l]iabilities'): . . . . [r]epayment of the

---

[3] Plaintiffs accepted $1,050,000 in 2005 from six investors, reducing their ownership from fifty percent to forty-three percent each.

6

> [l]oan, the [e]xit [f]ee, all costs and expenses of
> [l]ender, and all other obligations of [b]orrower under
> the [l]oan [d]ocuments in the event of . . . (ii) the filing
> by [b]orrower . . . of any proceeding for relief under
> any federal or state bankruptcy . . . made by borrower
> . . . .

According to the attorney plaintiffs' used for the loan closing, he explained to plaintiffs that this was a "bad boy" clause; if one of the loan provisions were violated, "the nonrecourse nature of the loan [would] change[]."

The construction project was completed in October 2009 and a certificate of occupancy obtained, which under the performance completion guaranty, relieved plaintiffs of personal liability. However, Grove Street could not repay GE's loan by the April 30, 2010 maturity date. Although Hedenberg tried to negotiate an extension of the maturity date to April 1, 2011, GE refused.

Hedenberg testified in his deposition that, as a result, he anticipated litigation with GE and possible foreclosure on the development. He wanted a tough business attorney to work out an extension with GE. He spoke with defendant Ciardi on April 28, 2010, and sent Ciardi "all the loan documents related to the transaction" so he could "review them." This included the Limited Joinder. Ciardi responded that he would review them over the weekend.

Plaintiffs met with Ciardi on May 3, 2010. By that time, Hedenberg had advised GE that the preconditions GE was proposing for an extension were not

7

acceptable because they all involved an "outlay of additional cash" that Grove Street did not have. Plaintiffs advised GE they had "several million dollars . . . invested in [the project]" and would protect their investment and interest. Their objective was to "try and work out something with GE, to work out some relief or some negotiated structured deal that would give us some temporary relief." Plaintiffs acknowledged they did not have any legal issues that they needed to have addressed personally when they met with the Ciardi defendants on May 3, 2010.

Hedenberg testified that he, Tresch and Grove Street were "one and the same. We created it, we managed it, we did everything. We're one and the same." He said that Ciardi never shared with them that there was a distinction between Grove Street and themselves individually. To Hedenberg, all three of them were the Ciardi defendants' clients. He "assumed" Ciardi was representing all three, but he never asked Ciardi that. There was no discussion at the May 3, 2010 meeting about any potential conflict of interest between Hedenberg, Tresch and Grove Street, or the need for independent counsel. There also was no discussion about the Limited Joinder or about any personal liability by Hedenberg or Tresch if Grove Street filed for Chapter Eleven bankruptcy. Hedenberg testified he was no longer concerned about personal liability because

8

their individual guarantees had been satisfied when the certificate of occupancy was obtained.

Ciardi's recollection of the May 3, 2010 meeting was different. He testified that Hedenberg told him about the Limited Joinder; he did not need to advise Hedenberg about it. He testified Hedenberg knew he had a duty to his shareholders to try to save Grove Street and did not care if Grove Street's bankruptcy triggered the Limited Joinder. Ciardi did not communicate to Tresch that the Limited Joinder would trigger personal liability because he "didn't represent Ray Tresch, so no."

The Ciardi defendants requested a $25,000 retainer, but plaintiffs advised in a May 18, 2010 email that they had "very limited cash," although they "definitely want[ed] to use [their] services." When plaintiffs learned GE filed a complaint in federal district court naming Grove Street as a defendant, Hedenberg contacted Ciardi by email on June 29, 2010, to advise him.

Grove Street paid an $11,160 retainer to the Ciardi defendants by check dated June 30, 2010. This check was voided by the law firm just a few days later and, at the firm's request, Hedenberg wrote a personal check to it for

9

$11,160.[4]  His notation on the check stated: "[d]eposit on legal retainer Grove Street Realty Urban Renewal, LLC."

Hedenberg signed an engagement letter with the Ciardi defendants for the representation of Grove Street dated July 1, 2010.  The signature line for Hedenberg did not indicate he was the managing member of Grove Street, although a "Resolution" also signed on July 1, 2010, authorizing Grove Street's bankruptcy, was signed by Hedenberg in his capacity as its "managing member." Tresch testified he thought Hedenberg signed the engagement letter for all three of them.

Hedenberg and Tresch met with Ciardi on July 1, 2010.  Hedenberg testified in his deposition that Ciardi was concerned about an assignment of rents and leases provision that plaintiffs had signed with GE as part of the loan agreement.  Ciardi told plaintiffs if they did not take action to stop GE, it could send letters to the tenants, collect the rents itself and plaintiffs would still be responsible to pay expenses for the apartments.  Ciardi advised them the only way to "hold GE off is by filing [C]hapter [Eleven] bankruptcy."  Although plaintiffs had no intention to file bankruptcy prior to this meeting with the Ciardi defendants, they "reluctantly" agreed to it.  Grove Street filed for Chapter Eleven

---

[4]  He paid another $7500 in September 2010.

bankruptcy that day. There was no discussion about the Limited Joinder at the July 1, 2010 meeting.

Plaintiffs became aware the Limited Joinder was triggered by the bankruptcy filing when GE notified them on July 8, 2010, that the amount due on the loan was $31,522,353.77 payable by July 30, 2010. They both testified that if they had known they could be personally liable, they would not have filed a bankruptcy for Grove Street.

Hedenberg forwarded GE's letter about the Limited Joinder to Ciardi. In his email, Hedenberg did not mention that he was facing personal liability of nearly $32 million. He asked "[n]ow that we have legal representation are they allowed to contact me directly or are they required to communicate through their attorneys to your office?" The email also expressed concern about avoiding contact by GE directly with the tenants. Ciardi's July 12, 2010 responding email to Hedenberg stated:

> [t]he guaranty does not provide for any personal liability. The Loan Agreement has a joinder which indicates that the filing by Grove will be a trigger [for] a guaranty obligation. You have a host of state law defenses to said claim and it would take a while to work through the system. We can discuss tomorrow.

In August 2010, GE filed suit in Illinois against Hedenberg and Tresch, individually, for the full amount of Grove Street's outstanding loan balance. The

11

Ciardi defendants did not represent Hedenberg or Tresch in that case; plaintiffs retained an attorney in Illinois. However, an associate with the Ciardi defendants did appear to monitor the case during September 2010 according to her billing records. She also had limited contact with GE and the Illinois attorney. Her notes at times refer to "clients." GE's motion for summary judgment in the Illinois action was granted in April 2011. In May 2011, a judgment for $33,606,020.75 was entered in favor of GE and against Hedenberg and Tresch in their individual capacities.

Grove Street's Chapter Eleven bankruptcy was dismissed by the bankruptcy court on July 28, 2011. After that, GE foreclosed on the apartments that then were sold for $25 million. This amount was applied to reduce the judgment against plaintiffs.

## C.

On December 1, 2017, the trial judge granted the Ciardi defendants' motion for summary judgment and dismissed plaintiffs' complaint. The trial court concluded the Ciardi defendants only represented Grove Street, not plaintiffs. The court observed that plaintiffs had not asked to be represented personally. Plaintiffs met with "defendants with the purpose of retaining them to represent Grove Street" in order to try "to save Grove Street and its assets."

12

This was important to plaintiffs because the property had considerable equity and its loss "would bring total personal financial ruin to the plaintiffs." Concerning Hedenberg's meeting with the Ciardi defendants on July 1, 2010, the court found the only "focus of the meeting was defendant's representation of Grove Street." Hedenberg used "we" and "ours" interchangeably in the July 9 and 10, 2010 email exchange to describe Grove Street and plaintiffs. However, the court found "that it is abundantly clear that plaintiff Hedenberg [was] talking about 'we,' the company Grove Street and 'me' as a managing partner of Grove Street because he goes on to say 'our existing residents' as in Grove Street's Rivercove residents."

The trial court found the retention agreement only provided legal representation for Grove Street. The court stated: "nothing defendant did would lead two seasoned businessmen to believe that they were being represented in their individual capacit[ies] by [the Ciardi defendants]." Although the Ciardi defendants could have told plaintiffs to obtain their own independent counsel, "defendants were under no affirmative duty to inform plaintiffs that they did not represent them because plaintiffs were not their clients and they were not engaged in a business transaction . . . ." The trial court concluded there was no attorney-client relationship between plaintiffs and the Ciardi defendants, and

A-3774-17T3

defendants could not be liable for failing to advise them about their personal liability.

The trial court denied plaintiffs' motion for reconsideration on January 23, 2018. It disagreed with plaintiffs, asserting it "did not misapply the Haytaian[5] factors, fail to appreciate evidence of an implied attorney-client relationship, or badly misinterpret other critical evidence of an implied attorney-client relationship." Defendants "did not expressly or impliedly agree to give advice or assistance to plaintiffs individually." The trial court did not fail to consider all the email evidence. Ciardi did not know plaintiffs were relying on him for legal advice.

The court found no error in its prior legal analysis. An affirmative act by the lawyer is required to create an attorney-client relationship. "Plaintiffs' unexpressed, subjective belief about representation was not a basis to establish duty."

> Plaintiffs never asked for advice or assistance from Ciardi and [the Ciardi defendants and] they never asked Ciardi or [the Ciardi defendants] about the effect of bankruptcy on them personally, they did not tell Ciardi or [the Ciardi defendants] that they were expecting advice about their personal interests and they did not have a legal issue that they asked Ciardi or [the Ciardi defendants] to address.

---

[5] See Herbert v. Haytaian, 292 N.J. Super. 426 (App. Div. 1996).

They just assumed that the Ciardi defendants represented them.

On appeal, plaintiffs contend the trial court erred by granting summary judgment because the evidence showed a factual issue about whether an implied attorney-client relationship existed. They contend the trial court overlooked or misunderstood evidence of the Ciardi defendants' conduct after the bankruptcy that corroborated the existence of an attorney-client relationship. In addition, plaintiffs argue that the Rules of Professional Conduct ("RPC") impose a duty to non-clients and that the trial court erred by granting summary judgment.

In the cross-appeal Ciardi contends that the trial court erred in granting partial summary judgment relating to collectability.

## II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

A-3774-17T3

Attorneys owe their clients a duty "to provide their services with reasonable knowledge, skill, and diligence." Ziegelheim v. Apollo, 128 N.J. 250, 260 (1992) (citing St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588 (1982)). This duty "will vary, depending upon the circumstances of the specific case." Cortez v. Gindhart, 435 N.J. Super. 589, 601 (App. Div. 2014) (citing Ziegelheim, 128 N.J. at 260).

A legal malpractice claim requires proof establishing: "1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred." Cortez, 435 N.J. Super. at 598 (quoting Sommers v. McKinney, 287 N.J. Super. 1, 9 (App. Div. 1996)).

Whether a duty exists is a question of law. DeAngelis v. Rose, 320 N.J. Super. 263, 274 (App. Div. 1999) (citing Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995)). The question "ultimately turns on considerations of fairness and public policy." Estate of Albanese v. Lolio, 393 N.J. Super. 355, 372 (App. Div. 2007) (quoting Fitzgerald v. Linnus, 336 N.J. Super. 458, 468 (App. Div. 2001)).

Our Supreme Court has established three bases for establishing duty. See In re Palmieri, 76 N.J. 51 (1978). First, duty can be established by the creation

16

of an express attorney-client relationship, which can be evidenced by the "articulation of a professional engagement," i.e., a retention or fee agreement. Id. at 58-59. Second, it can also be established by inference. Id. at 59. An attorney-client relationship can be inferred by conduct demonstrating the performance of legal services. Id. at 58-59. Third, even where there is not an attorney-client relationship, attorneys can owe a duty to non-clients when "he knows or should know [that they] depend on him for professional advice." Id. at 59 (citing In re Hurd, 69 N.J. 316, 330 (1976)).

Plaintiffs do not contend they signed a retainer agreement with the Ciardi defendants to represent them individually. Thus, there was no "express" attorney-client relationship between plaintiff and the Ciardi defendants.

An attorney-client relationship can be found without a written agreement. Haytaian, 292 N.J. Super. at 436. It can be established by inference or inferred from conduct demonstrating the performance of legal services. Palmieri, 76 N.J. at 58-59. Plaintiffs argue that there was an implied attorney-client relationship with the Ciardi defendants.

"An attorney-client relationship may be implied when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance pertains to matters within the attorney's professional competence, and (3) the attorney

expressly or impliedly agrees to give or actually gives the desired advice or assistance." Haytaian, 292 N.J. Super. at 436 (internal quotation marks omitted) (citing Bays v. Theran, 639 N.E.2d 720, 723-724 (Mass. 1994)) (internal quotation marks omitted).

There was no evidence that plaintiffs sought advice for themselves as individuals from Ciardi or his firm. There are no emails where they asked for representation before or after Grove Street's bankruptcy filing. Even if we assume that Hedenberg and Tresch, after their many years in business, did not understand the distinction between their business entity (Grove Street) and themselves as individuals, they both acknowledged they had no personal legal issues for Ciardi when they met with him, and simply assumed he was representing Grove Street and them. They did not inquire about the Limited Joinder. After the Limited Joinder was triggered, Hedenberg asked Ciardi about GE's ability to contact them directly.[6] He did not inquire about their personal liability under the GE loan. Ciardi's response that they had "options" was not

---

[6] Hedenberg's question may have raised a fairly nuanced distinction. Under RPC 1.13(a) a lawyer "retained to represent an organization represents the organization distinct from its directors, officers, employees, members, shareholders or other constituents." If they are members of a control group, however, RPC 4.2 provides that a lawyer "shall not communicate about the subject of the representation" if they know the person is represented, including with a member of the control group.

legal advice—and certainly was not an agreement to provide representation. Plaintiffs do not argue the Ciardi defendants gave them any legal advice; their position is that the Limited Joinder was not discussed at all.

Hedenberg signed the retention agreement for Grove Street. It was Grove Street that was identified as the party the Ciardi defendants would represent. Hedenberg initially paid the retainer on Grove Street check stock. When that was voided and Hedenberg paid by personal check, the notation said it was for Grove Street's representation. He treated this as a capital contribution to Grove Street or a cash infusion into the company.

Plaintiffs were aware of the Limited Joinder through their earlier discussions with the attorney who represented them when the GE loan was finalized. Although Hedenberg failed to make a distinction between Grove Street and himself, the record is clear the Ciardi defendants were retained to preserve Grove Street from GE's foreclosure. Plaintiffs were financially invested in the entity; they were making every effort to hold off GE so that another investor could be obtained that could pay GE and then market the rentals. Aside from an occasional reference to "you" or "we"—we agree with the trial court that there was no evidence that showed a genuine issue of fact that

A-3774-17T3

an implied attorney-client relationship existed between plaintiffs and the Ciardi defendants.

Plaintiffs contend that even if there were not an implied attorney-client relationship, they were non-clients who relied on the advice of the attorneys. "[A]ttorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorney's representations and the non-clients are not too remote from the attorneys to be entitled to protection." Petrillo, 139 N.J. at 483-84. The problem with plaintiffs' argument is that they contend the Ciardi defendants never discussed the Limited Joinder with them. As such, there was no advice about the Limited Joinder upon which they relied.

We do not agree with plaintiffs' argument that the case law or RPCs require a different result. Haytaian was an attorney disqualification case where an attorney agreed to provide legal services to a client accused of sexual harassment, but the signed engagement letter was never approved by the Attorney General. 292 N.J. Super at 434-35. When the same attorney was retained to represent an alleged victim, the State sought to disqualify the attorney under RPC 1.9 on the basis of an implied attorney-client relationship. Id. at 435. We agreed that the attorney-client relationship existed and that there was a disqualifying conflict of interest. Id. at 440-41.

Here, the only retention agreement was for Grove Street's representation. Plaintiffs did not request representation as individuals. This is not a disqualification case. Thus, Haytaian is factually distinguishable.

Petit-Clair v. Nelson, 344 N.J. Super. 538 (App. Div. 2001), relied on by plaintiffs, did not involve an implied attorney-client relationship. It involved a business relationship between an attorney and clients, which implicated RPC 1.8(a). Id. at 440-41. Here, there was no allegation that the Ciardi defendants had any business-type relationship with Grove Street or plaintiffs; the issue as framed by plaintiffs was whether there was an attorney-client relationship.

RPC 1.13(d), cited by plaintiffs, provides that an attorney who is "[d]ealing with an organization's . . . members, . . . shall explain the identity of the client when the lawyer believes that such explanation is necessary to avoid misunderstanding on their part." It expressly does not provide that if an attorney does not provide this explanation, an attorney-client relationship is established. In fact, RPC 1.13(a) is clear that a lawyer who represents an organization does so "distinct from its . . . members[.]"

After careful review of the record and the applicable legal principles, we conclude that the parties' remaining arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). Thus, we

21

affirm the orders that granted summary judgment to the Ciardi defendants and denied reconsideration. The Ciardi defendants' cross-appeal is moot.

Appeal A-4069-17

I.

The Ciardi defendants filed a third-party complaint against Grove Street on October 21, 2014. The first count requested indemnification from Grove Street, claiming that if the Ciardi defendants were liable to plaintiffs for legal malpractice, then it was Grove Street that was primarily liable, not the Ciardi defendants. The second count alleged Grove Street breached its retention agreement with the Ciardi defendants because it had not paid $116,672.36 in outstanding legal bills as of June 8, 2012.

Grove Street filed a motion for summary judgment in December 2017. By this time, plaintiffs' legal malpractice complaint had been dismissed. Grove Street argued the indemnity claim was moot. It also argued the claim for attorney's fees should be dismissed because the Ciardi defendants neither alleged nor provided the fee arbitration notice that was required under Rule 1:20A-6.

The Ciardi defendants filed a cross-motion for summary judgment on the claim for attorney's fees. They alleged Grove Street signed a retention

agreement with them on July 1, 2010. An $18,560[7] retainer was paid by two checks—one in July 2010 and the other in September 2010—signed by Hedenberg "as a capital contribution or loan to Grove Street."

The Ciardi defendants represented Grove Street during its bankruptcy and also afterwards when GE foreclosed on Grove Street's property. They claim that by June 8, 2012, they incurred legal fees of $116,673.36. Grove Street did not dispute that it did not pay these fees. Hedenberg testified in his deposition that Grove Street did not have the funds to pay them and was not satisfied with the representation it had received.

Grove Street did not retain its own expert to challenge the fee claim, but in a supplemental certification, it alleged that "[a]ll but $8293.36 of the fees and costs that Ciardi [sought] to recover were for services rendered or costs incurred during Grove Street's bankruptcy" and that the Ciardi defendants had not obtained approval from the bankruptcy court for these charges. The Ciardi defendants did not dispute their failure to provide the fee arbitration notice under Rule 1:20A-6.

---

[7] The copies of the checks provided in the appendix total $18,660.

     A-3774-17T3

On March 9, 2018, the trial court dismissed the Ciardi defendants' claim for indemnification in count one of the third-party complaint.[8] The order denied without prejudice the Ciardi defendants' cross-motion for summary judgment for legal fees of $116,672.36. With respect to this fee claim, the court found it only had jurisdiction over "fees that [were] <u>unrelated to the bankruptcy in the amount of $8293.36</u>." It granted the Ciardi defendants' cross-motion for summary judgment related to the non-bankruptcy related fees. It also "amend[ed] Ciardi's [third-party] complaint regarding the addition of the pre-action notice." Grove Street was given thirty days to exercise its right to fee arbitration, but if it did not, a judgment would be entered against it for $8293.36. Grove Street declined to arbitrate. An $8293.36 judgment was entered on April 18, 2018, against Grove Street in favor of the Ciardi defendants.

The Ciardi defendants appeal the April 18, 2018 judgment to the extent it denied fees related to the bankruptcy. On appeal, they contend the trial court had jurisdiction to adjudicate the entire attorney fee claim.

## II.

___

[8] Although the trial court reached this conclusion in its opinion issued in support of its March 9, 2018 order, the order itself did not address the indemnification count (count one). We need not address this because the indemnification count was not the subject of this appeal.

Generally, we review the award of attorney's fees under an abuse of discretion standard. <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005). However, the issue raised here—whether the trial court had jurisdiction post-bankruptcy to adjudicate an attorney's claim for fees for services rendered to a client during bankruptcy when the attorney did not apply to the bankruptcy court for approval—is a question of law that we review de novo. <u>See</u> <u>D'Agostino v. Maldonado</u>, 216 N.J. 168, 182-83 (2013) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

We do not agree with the Ciardi defendants that the trial court had jurisdiction over the attorney fees associated with the bankruptcy action even though the bankruptcy action was dismissed. Under 28 U.S.C. § 1334(a), the federal "district courts shall have original and exclusive jurisdiction of all [bankruptcy] cases under [T]itle [Eleven]." This extends to "all the property, wherever located, of the debtor" and "all claims or causes of action that involve construction of [11 U.S.C. § 327] . . . ." 28 U.S.C. § 1334(e).

The Bankruptcy Code authorizes the payment of "reasonable compensation for actual, necessary services rendered" by an attorney providing assistance in a bankruptcy proceeding. <u>See</u> 11 U.S.C. § 330(a)(1)(A). The statute lists factors for the court's consideration in determining reasonable

compensation, including the time spent, the rates charged, whether the services were necessary or beneficial, whether the time spent was reasonable given the nature of the case or issue, whether the attorney demonstrated "skill and experience in the bankruptcy field" and whether the compensation was "reasonable based on the customary compensation charged by comparably skilled practitioners." 11 U.S.C. § 330(a)(3)(A) to (F). Compensation is not allowed for the "unnecessary duplication of services" or those that were not reasonably likely to benefit the estate or necessary to its administration. 11 U.S.C. § 330(a)(4)(A).

An attorney seeking compensation for services shall file an application in bankruptcy court that sets forth "the services rendered, time expended and expenses incurred, and . . . the amounts requested." Fed. R. Bankr. P. 2016(a). The Ciardi defendants do not dispute they did not file an application with the bankruptcy court seeking payment of their attorney's fees.

We do not agree the jurisdiction of the bankruptcy court is extinguished just because the bankruptcy case has been dismissed. "Fees in a bankruptcy proceeding are governed by federal, not state, law." In re 5900 Assocs., Inc., 468 F.3d 326, 329 (6th Cir. 2006). Although generally, "the dismissal of a bankruptcy case should result in the dismissal of 'related proceedings' because

the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings," the bankruptcy court has discretion to retain jurisdiction. In re Smith, 866 F.2d 576, 580 (3d Cir. 1989) (citing In re Stardust Inn, Inc., 70 B.R. 888, 890 (Bankr. E.D. Pa. 1987)). Consideration is given to "(1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved." Ibid. "[A] bankruptcy court's decision on attorney's fees is not a 'related proceeding[ ].' It is part of the original proceeding." In re 5900, 468 F.3d. at 330 (citation omitted) (quoting Smith, 866 F.2d at 578); see In re Sweports, Ltd., 777 F.3d 364, 367 (7th Cir. 2015) (providing that "besides its ordinary jurisdiction[,] a [court has] 'clean-up' jurisdiction ('ancillary' jurisdiction, it is commonly called) to take care of minor loose ends").

We recognize that courts are not uniform in reaching this result. See Iannini v. Winnecour, 487 B.R. 434, 439 (Bankr. W.D. Pa. 2012) (providing that where the bankruptcy court does not expressly retain jurisdiction post-dismissal "the court thereafter presumptively lacks jurisdiction over the issue"). However, because attorney's fees are part of a bankruptcy court's "core of jurisdiction," we agree with the trial court that the bankruptcy court should determine the issue in the first instance. See In re Brickell Inv. Corp., 171 B.R. 149, 156 (Bankr. S.D.

Fla. 1994) (providing that "[f]ees are such an essential item to the bankruptcy court's core of jurisdiction that the court can, and must, consider same, even after dismissal of the case.").

The Ciardi defendant's reliance on Pellettieri Rabstein & Altman v. Protopapas, 383 N.J. Super. 142 (App. Div. 2006), is not dispositive. In Pellettieri, plaintiff law firm represented a defendant in both a matrimonial case and a bankruptcy case. The main issue in the appeal had to do with a statute of limitations, not the jurisdiction of the state court to hear a fee claim involving the bankruptcy case. Id. at 144. Although the trial judge apparently concluded that attorney's fees arising under the bankruptcy case were not barred by the statute of limitations, we did not address that issue in the appeal because the order that denied summary judgment was interlocutory and therefore, "not cognizable" on appeal. Ibid. Thus, Pellettieri simply did not resolve the issue of jurisdiction.

After careful review of the record and the applicable legal principles, we conclude that the parties' further arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). Therefore, we affirm the trial court's April 18, 2018 judgment for $8293.36 in favor of the

Ciardi defendants and against Grove Street and in doing so, affirm the March 9, 2018 order.

In A-3774-17, the orders granting summary judgment to the Ciardi defendants, dismissing plaintiffs' complaint, and denying reconsideration, are affirmed. We also affirm the April 18, 2018 order to the extent it is raised in A-3774-17. Ciardi's cross-appeal is moot because of the dismissal of plaintiffs' complaint.

In A-4069-17, the orders are affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION